MANDER vs. KEONENBERGER

———

(April 12, 1926, Opinion and Decree)

———

(*Syllabus by the Court.*)

1. **Louisiana Digest—Donations—Par. 61; Damages—Par. 3; Pleading—Par. 57, 62.**

A petition which alleges that a person desired to make a testament in favor of the plaintiff and was prevented therefrom by the artifices and false statements of the defendants discloses a cause of action in damages.

Appeal from Civil District Court, Division "A", Hon. Hugh C. Cage, Judge.

Action by Edna Mander, wife of Seymour Kling against Marie M. Keonenberger, et al. There was judgment for defendant maintaining the exceptions of vagueness and no cause of action filed by him and dismissing the suit. Plaintiff appealed.

Judgment reversed and case remanded for trial according to law.

Jos. H. Brewer, of New Orleans, attorney for plaintiff, appellant.

F. J. Dreyfous and A. D. Danziger, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J. This is an action in damages against the defendants on the allegations that, by fraudulent devices, they prevented one from making a testament in favor of the plaintiff.

The plaintiff alleged that on June 2, 1922, she was employed as a nurse to care for the late Theresa Keonenberger Koch, who was then suffering from a virulent disease which rendered plaintiff's duties dangerous and difficult; that when she was engaged it was agreed that she should remain until June 30, 1922; that on June 17, 1922, Mrs. Keonenberger Koch stated to plaintiff that if she would continue to nurse her after June 30th, that she would see that plaintiff would receive $1000; that on said June 17th, Mrs. Keonenberger Koch requested the defendants, her sisters, Marie and Katherine Keonenberger, to send for Felix J. Dreyfous, Notary, in order that she might make her testament, and that "she desired to leave to plaintiff $1000 as compensation for her services, care and kindness to her; that thereupon the said Katherine Keonenberger informed her said sister Theresa Keonenberger Koch, now deceased, that Felix J. Dreyfous, the Notary Public, was then out of the city, although in truth and in fact, the said Felix J. Dreyfous was then in the City of New Orleans, and that immediately thereafter the said Katherine E. Keonenberger went into another room, and, in the hearing of plaintiff, told Marie M. Keonenberger that Mrs. Theresa Keonenberger Koch wanted her, Katherine E. Keonenberger, to send for said Dreyfous to make a new will, and that thereupon Marie M. Keonenberger told her said sister, Katherine, to tell her sister, Mrs. Theresa Keonenberger Koch, that said Dreyfous was out of the city, and that 'her will is made and it is all right', and that Miss Katherine K. did so".

"That by the actions and conduct of the said Marie M. K., and the said Katherine E. K., who acted in concert and in pursuance of a preconcerted and agreed plan to prevent the execution of said last will and testament by their sister, Mrs. Theresa K. Koch, now deceased, in order that they, the said Marie M. K. and Katherine E. K., might benefit thereby, and prevent said decedent from making the bequests aforesaid, and among others complying with the promise made by decedent, Mrs. Theresa K. K. to your petitioner to make a will leaving petitioner the compensatory bequest of $1000 promised to petitioner as a reward for her kindness, consideration, and care exercised towards the said Mrs. Theresa K. K., as aforesaid, the said Marie M. K. and the said K. E. K., damaged your petitioner in the full sum of $1000 and are liable to petitioner in said sum of $1000 as damages by reason of their wrongful, illegal, and tortious act in preventing and conspiring to prevent the execution of the said last will and testament by the said Mrs. Theresa K. K., in conformity with her promises made to petitioner aforesaid.

That thereafter the said Marie M. K., and the said Katherine E. K., each stated to petitioner, on July 21, 1922, that she, plaintiff, need not worry as they would see that she received what the said Mrs. Theresa K. K. had promised to her; that said statement was made the day immediately following the burial of the said decedent, and that relying thereon, plaintiff was induced to take no action to enforce the recognition and payment of her said claim in the matter of the succession of said decedent."

Plaintiff prayed for judgment for $1000.

The defendants filed an exception of "no cause of action" and of "vagueness", without stating the reasons why the petition disclosed no cause of action or was vague.

The judgment "for the reasons orally, assigned" maintained the exceptions and dismissed plaintiff's suit.

We are compelled to differ from the learned judge of the District Court.

The defendants were the sisters and heirs of the deceased and, by preventing her from making a testament in favor of the plaintiff were to profit by the sum of the legacy, and the plaintiff was to be damaged by so much.

The rules as to fraud in contracts are applicable to testaments 7 Aubry and Ran., p. 69 S. 3; 11 Laurent, S. 130; 16 Dalloz Rep. p. 116 S. 243. The maxim of the law is that no one shall profit by his fraud; and Article 2315 of the Civil Code ordains that "every act of man that causes damage to another obliges by him by whose fault it happened to repair it".

The amount of the damage is the loss plaintiff has sustained. There is not a single text of the law nor any decision that declares that allegations such as are contained in the petition in this case discloses no cause of action. The allegations of the petition must be taken as true for the purposes of a judgment herein. They are that the deceased, a helpless invalid, requested the defendants to send for Mr. Dreyfous, a notary, in order that she might make her will with a disposition in favor of the plaintiff, and that these defendants told her that Mr. Dreyfous was out of the city when in truth he was within the city; and then told her other things narrated in the petition which also were not true.

That by reason of these false assertions the deceased was dissuaded and prevented from making her will is asserted and must be assumed to be true. It would be a reproach to justice, to say the least, and a premium on deceit, to permit the defendants to thus enrich themselves, as heir of their sister, by their perfidy and fraud, and to damage the plaintiff with impunity. Such is not the law.

In the case of Kelly vs. Kelly, 10 La. Ann. 622, the plaintiff sued the defendant in damages for having prevented "by threats and violence" her husband from making a will in her favor. The defendants filed a plea of no cause of action, which was maintained by the District Court. On appeal, the Supreme Court remanded the cause to be tried on the merits. The jury rendered a verdict in favor of the plaintiff. On appeal the Supreme Court said:

"Actions of this kind were admissible under the rules of the Civil Law * * * the only remedy known to our jurisprudence in such cases is given to the injured party by an action sounding in damages."

"We incline to the opinion that a sufficient ground of action has been alleged. A case in point has been reported by Ricard, in which the chapter of Vezelay was admitted to prove that Annede Siron, during her last illness, had often declared to her servants that she desired to make a will and give 3000 livres to the church of Vezelay; that she had one day demanded the attendance of the notary, but that her father had prevented it, forbidding the entrance of any notary in his house."

The verdict of the jury was reversed for the reason that there was no evidence to show that the execution of the will was prevented by the threats and violence charged.

Whether the charge was "threats and violence" or fraud, the law is the same, as fraud vitrates all acts.

But one thing certain is that the deceased was prevented from making a will by the fault of the defendants.

The French jurisprudence is in accordance with the Kelly case.

One page 123 S. 255 of 16 Dalloz Repertoire, which is to the Civil Law what Corpus Juris is to the Common Law, we read (translated):

"If the violence and fraud used to obtain a testament vitiates its disposition, the same means must give rise to an action, if they have been put in operation to prevent an individual from making a testament. The legatee who would pretend that he was to be benefited will be permitted to prove the intentions of the deceased, and to claim, not the execution of the projected dispositions, for a verbal testament is not susceptible to receiving executions, but damages which would vary according to the circumstances and to the nature of the proof."

The author quotes the case of Formica vs. Buscaglione, decided in 1805.

The facts were as follows:

"On August 25, 1805, there died at Turin one Buscaglione leaving an only daughter married to Formica. He had made no testament, and nevertheless his widow claimed for herself and for her two daughters from a first marriage the liberalities which she pretended her husband had manifested the intention to make to them, and pretended that through fraud Formica and his wife had prevented him from making. The latter who had gathered in the succession, insisted that in the absence of a testamentary disposition which would have realized the liberalities which the

deceased might have intended to make his widow could claim nothing."

Then follows the allegations that several days before his death her husband in presence of the defendant Formica and others had expressed his well defined intention to leave 1000 francs to his wife and 1500 francs to each of his daughters; that Formica and his wife had dissuaded Buscaglione from making the will by promising to faithfully carry out his wishes; that after the death of Buscaglione, Formica and his wife had told several persons that they were bound for the lagacies which he had manifested the intention of making to the plaintiffs and that they would make delivery of them.

The judgment maintained the cause of action in an opinion too lengthy to reproduce in full. We shall quote only extracts: The Roman Code "demonstrates clearly enough that he who would either prevent any one from making a testament or compel him so to do could not escape the pursuit, in a civil action by him who, by reason of those manoeuvres, would have been injured. The case where the writer of the testament was not permitted to enter the room of the would-be testator, or where the witnesses were prevented from approaching, are only partial designations of the means which may be used to prevent the making of the testament; that, as a whole, it is not only a mode of physical coercion which is prescribed but also moral violence, all crafty devices, all malicious and deceiving artifice by which some one has been either induced to make a testament, or dissuaded, or prevented from making one; * * * its disposition (Civil Code) are based upon the principle upon which rests the sanction of the Roman laws, namely, upon the liberty of testaments, and that no one should be permitted to take advantage of deceit and fraud; we see besides solemnly consecrated in principle Articles 1382 and 1385 (La. Civil Code 2315-2318) that every act whatever of man that causes damage to another obligates him by whose fault it happened to repair it.

It follows that the appellants have effectively, by a positive assurance given to Buscaglione to execute, as regards the plaintiff and her daughters his wishes verbally expressed, and on the pretext of the want of necessity of an act in form, they have dissuaded him from the idea of making a testament and to exercise by that means the liberalities which she proposed; their actual refusal to execute their promises, would demonstrate that it is through deceit that they have prevented the deceased from making a testament, and consequently they would be bound in damages to the plaintiff; that it is in vain that the appellants believe that they can escape the payment of these damages, in relying on the absurdity that would follow the system of appellant to claim the payment of lagacies not consigned in one of those acts which the law recognizes as alone capable to transmit, by gratuitous title, the property of another; for it is sufficient to observe that it is not the legacy, as a legacy, that the plaintiff claims but the payment of an indemnity, and that because she alleges that the appellants have used deceiving means near her deceased husband, by which she was deprived of the legacies which he wanted to make to her and which he would have made had he been able to make his testament.

Indeed under the terms of the Article C. C. 1149, (C. C. 1934) damages are due, as much for the loss sustained as for the profit of which one has been deprived.

Grenier on Testaments commenting on the above decision says on page 355:

"To resume, an abstraction made of all circumstances which may present shades from which might result differences of opinion, the decision of April 23, 1808, has laid down a principle that in order to justify a judgment assessing damages proportionate to the legacies which the testament from which the deceased was dissuaded, it is not necessary that the obstacle preventing the making of the testament should have been the result of physical violence or ill-treatment; that it would be sufficient that the deceased could not make his testament according to his wishes, by means of all moral violence, of all crafty devices, of all artifice malicious and deceiving. Hence, this principle appears to us incontestable, we shall always be moved by the wisdom of the motives which have dictated the decree, and of the healthy erudition which has been its foundation."

To the same effect is Bedarride on "Deceit and Fraud", S. 404, p. 457-408-409 and 411, which it would be too long to reproduce here.

"Preventing one from making a testament has always been considered as a fraud giving rise to an action in favor of the one who has suffered from it." S. 404.

S. 407: "The only action accruing to the one who suffers from preventing the making of a testament is the one in damages against the author of the hindrance; this action is based on the general principle of Article 1382 of the Civil Code."

S. 408, p. 465: "If the plaintiff alleged that the notary and the witnesses had been knowingly turned away or dissuaded, the facts would be pertinent and serious, for they would in fact constitute artifices, fraudulent manoeuvres, establishing fraud and giving rise to the obligation of repairing the damage suffered."

S. 409: "The extent of the damages due to the one who proves the hindrance to make the testament to his prejudice, is measured by the intentions expressed by the deceased."

S. 417: "Hence he who by virtue of the suppression of the testament, has taken possession of the succession must be condemned to make restitution to the instituted heir who proves the suppression of the institution."

It is not only the one who prevents the making of a will who is liable to the legatee but the notary who makes an invalid will by design or ignorance.

A notary who executes a defective will is responsible to the legatees in damages; their measure is the amount of the lost legacy after the payment of debts. Weintz vs. Kramer, 44 La. Ann. 35, 10 South. 416; McConnell vs. Ory, 46 La. Ann. 465, 15 South. 424; 2 Fuzier-Herman, p. 678, No. 106 Dalloz Rep. Vo. *Responsabilie* No. 307.

Were it not so, the notary might collude with the heirs to defeat legacies intended by the testator.

40 Cyc. 1197: "Where a testator attempts to revoke his will, but is prevented by fraud or subterfuge there is no revocation. It has been said, however, that equity will interfere to prevent a party whose fraud has prevented revocation from taking advantage thereof." 2 Domat, Liv. III, Tit. 1, Sec. 5, No. 26, p. 553.

It is therefore ordered that the judgment herein be reversed and avoided, and it is now ordered that the exceptions filed to the petition herein be set aside and dismissed and that this case be remanded to be tried on the merits.

The costs of appeal to be paid by the defendant-appellee and the costs of the district court to await the final judgment in the case.

Judgment reversed and case remanded.