GLADNEY, Judge.
Chester E. Liles, plaintiff herein, a pipe fitter welder, on December 6, 1957, instituted this action in tort against the Midwest Piping Company, Inc. and its liability insurer, American Mutual Liability Insurance Company, and alternatively, he sought to recover workmen’s compensation from the Kaminer Construction Company and its workmen’s compensation insurance carrier, Liberty Mutual Insurance Company. The judgment rendered on September 4, 1962, denied plaintiff’s claim for workmen’s compensation and awarded $2,000.00 on the tort claim. The plaintiff has not appealed from the decree insofar as it refused workmen’s compensation, but he has appealed from the judgment on his tort claim, and asks a substantial increase in the award of damages. The defendants, Midwest Piping Company, Inc. and American Mutual Liability Insurance Company answer the appeal and pray that the judgment in favor of plaintiff-appellant be reversed. Defendants ask, in the alternative, that the amount of the award to plaintiff be reduced.
The Continental Can Company, on June 5, 1957, was constructing a large addition to its paper mill at Hodge, Louisiana, and in the performance of this work two of its sub-contractors were Midwest Piping Company, Inc. and Kaminer Construction Company. Liles was employed on this job by the latter named company as a welder, a job which he had been performing for several months. On the date aforesaid he was engaged in his work on the first floor at a time when two or more employees of Midwest Piping Company, Inc. were doing some work on the second floor immediately above the plaintiff. One of the employees of Midwest dropped a file which fell through a grating in the floor and struck Liles a glancing blow on the upper portion of his back. The file was a half round file, eighteen inches in length and estimated to weigh approximately two pounds. It fell a distance of more than twenty-five feet before striking plaintiff.
The accident occurred during the morning hours and Liles continued his work until about noon, when he reported to and was examined by Dr. A. E. McKeithen. The injury which Dr. McKeithen described as a scratch or abrasion was not dressed and was thought by the doctor to be of no import. Liles returned to work for the remainder of the day and continued to perform the duties of his employment until June 12th, on which date he was accused of a breach of safety regulations and was discharged from his employment. Displeased by this action, he engaged in a fight with one of his foremen.
The occurrence of the accident is well established by the evidence and we experience no difficulty in finding that it was due to the negligence of an employee of Midwest Piping Company, Inc. The principal question presented for our determination pertains to the extent and nature of the injuries sustained by the complainant as will allow fixing of the amount of damages that can be awarded. Counsel for Liles urges that the award of $2,000.00 made by the trial court, is inadequate and prays that the same be increased to $22,000.00. Defendants earnestly contend the amount so allowed is excessive, and should be reduced to the nominal sum of $500.00, should the court find that plaintiff has sustained a compensable injury.
Counsel for the defendant assert that a proper decision in this case is conditioned upon the degree of credibility to be attached to Liles’ testimony. Their brief emphasizes plaintiff’s admissions of a number of litigated claims and argues that such a record characterizes him as a chronic claimant. Mentioned are claims for damages and workmen’s compensation for personal injuries made in 1950, 1953 and 1956, prior to the institution of this suit. Also, in support of the attack on Liles’ credibility, it is argued claimant’s testimony is impeached as to severe pain felt as a result of being struck by the file. One witness testified Liles at first joked about the incident. Further *586 pointing to claimant’s testimony with reference to the fight on June 12th, counsel surmise that plaintiff in all probability suffered a greater injury in the fight. Liles testified that he struck his foreman and then felt a violent pain, and in the ensuing scuffle he was struck in the back by another person, which lick was so severe that he passed blood in his urine for several days. A controverted fact is a statement by Liles that at the time when he was struck by the file, he was thrown to the floor and was stunned and dazed as a result of the blow. This statement was contradicted by other witnesses present at the time.
It is the testimony of plaintiff that due to the back injury which he received on June 5, 1957 he has not been able to return to his job as a pipe fitter welder, for which he customarily received a weekly wage of $125.00, and that he has been forced to seek employment in other less remunerative jobs, such as intermittent selling, with a loss in earnings over the five and one-half years following the accident of about $4,000.00 annually. He testified further that the duties of a welder arduous and require the ability to twist and bend the body in unusual positions and that because of pain which he continues to suffer, he can no longer perform his duties. He was forty-five years old at the time of the trial.
Since June 5, 1957, plaintiff was examined by eight doctors, all of whom were specialists, with the exception of Dr. A. E. Mc-Keithen, who is a general practitioner.
Dr. McKeithen examined plaintiff a few hours after the accident. He testified that the only manifestation of physical injury was an abrasion or scratch below the shoulder to the left of the mid-line of the back; that he had no recollection that Liles told him of having fallen to the floor as a result of the blow; that he was of the opinion that the patient had suffered no serious injury,, and that the headaches of which he complained were not organic in origin. After seeing Liles again on June 10th, Dr. McKeithen referred him to Drs. Cannon and Ledbetter, orthopedic surgeons in Monroe. This referral was at the request of plaintiff.
The claimant was next examined by Drs. Cannon and Ledbetter, acting together, on June 17, 1957. These doctors found no evidence of muscle spasm and that the patient had a normal range of motion in the dorsal and cervical spine. Their examination was essentially negative and revealed no significant findings. These two examiners testified that plaintiff on that examination failed to inform them of having fallen flat on the floor, or pitching forward or having been rendered dazed or unconscious. Both were of the opinion that Liles was fully able to perform his duties as a welder. Although Liles was re-examined by these doctors on April 29, 1958, and on March 16, 1959, their professional opinions remained the same.
On June 16, 1957, plaintiff of his own volition, consulted Dr. D. F. Overdyke, orthopedic specialist of Shreveport, who examined him and was of the opinion that plaintiff had sustained a sprain of the dorsal spine superimposed upon an already arthritic area, and “the symptoms in the head” were typical of traumatic occipital neuralgia accompanying a mild cervical sprain. He recommended the patient should refrain from all types of strenuous activity for an eight-week period, during which time he should wear an Arnold-type brace. On February 24, 1958, the doctor advised plaintiff’s counsel that Liles had been treated conservatively with satisfactory improvement, as far as he was concerned, but that on February 21, 1958, Liles had stated to him that he had a severe recurrence of pain in the dorsal region of the back and was unable to do any type of work. Remarking that the neurological consultation which followed was negative, this doctor stated in his letter that the patient should seek further medical consultation as in his opinion Liles should be able to perform some type of gainful work.
*587 Dr. H. K. Faludi, a neurologist, examined plaintiff on March 18, 1958, and he was of the opinion that the patient had suffered contusions to the thoracic spine and that he was suffering from tension headaches with occipital neuralgia. This diagnosis was apparently with reference to the accident of June 5, 1957. His findings were otherwise negative and he estimated that his patient has a partial residual disability of about five to ten per cent for the body as a whole, and commented that such disability does not necessarily interfere with the patient’s work.
Liles was examined by Dr. A. Scott Hamilton, orthopedist of Monroe, Louisiana, on April 3, 1959, at the conclusion of which this doctor’s opinion was that plaintiff, as a result of the accident on June 5, 1957, had sustained a strain of the sacrospinalis muscles right, and there was some residual disability due to congenital causes and an old fracture of four ribs which had healed. He estimated plaintiff’s disability as being from eight to twelve per cent of the body as a whole, but that the disability which he considered temporary and partial, would gradually decrease with rehabilitation and eventually would not exceed from three to five per cent. At the time of the examination, however, Dr. Hamilton believed that plaintiff should not attempt to do manual labor such as required by welding.
In January, 1959, Dr. Frank Owens Mc-Gehee of Houston, Texas, made an orthopedic examination of plaintiff with a diagnosis of traumatic injury to the cervical and lumbar spine. The examiner stated that he was unable to account for the fact that Liles was still having some symptoms in both his cervical and lumbar spine since his original inj ury was over a year old.
On December 23, 1958, Dr. R. C. Robertson, a neurosurgeon of Houston, Texas, reported the results of an examination of the plaintiff and stated that because of tenderness encountered and associated with the back, Liles’ complaints were referrable to his bony lesions. He made no neurological findings sufficient to make a diagnosis of the nervous system involvement. The doctor estimated residuals of permanent, partial disability to the spine as being ten per cent of the body as a whole.
It is apparent that many of these examinations were made long after June 5, 1957, and obviously most of the diagnoses largely depended upon the subjective complaints of the patient. The record reflects that the identical complaints were not given to each of the examiners and accordingly, this fact alone could account for some of the opinions reflected. It is clear to us, however, that practically all of the doctors were of the opinion that any disability sustained as a result of the accident on June 5, 1957, was not permanent and plaintiff certainly, after a period of time, was not prevented by reason of such accident from following his occupation.
The judge a quo was of the opinion the injury sustained by the plaintiff should be compensated in the sum of Two Thousand ($2,000.00) Dollars. We are of the opinion that this amount is neither excessive nor inadequate. Accordingly, the judgment is affirmed, appellant to pay costs of appeal.