McBRIDE, Judge.
On the misty and rainy morning of December 22, 1962, at 6:15 o’clock (before daybreak) an automobile owned and driven by Cleo Waddell in which his wife, Kathleen, and his brother, Kenneth, were passengers, traveling northward on La. Highway 20 near the Town of Vacherie, Parish of St. James, ran into the rear of a trailer loaded with sugar cane which was attached to and was being pulled by a truck in the same direction. The suit brought by said occupants of the Waddell car for damages they allegedly sustained in the accident against the owner of the truck-trailer (which we shall hereinafter refer to as “cane truck”), his employee-driver, and the liability insurer of the vehicle was dismissed after a trial on the merits, and they have appealed.
Appellants charge that Gravois, owner of the cane truck, and Dillon, its driver, were negligent in seven particulars, only one of which need be considered by us and that is that the cane truck was being operated “without lights to the rear to indicate its presence” on the highway. La. Highway 20 is blacktopped and for a considerable distance in either direction from the point of impact is level and straight.
The Waddell car, after having been on the highway for about ten minutes before the accident, first overtook a bus, which it passed in complete safety. After passing the bus Cleo Waddell swerved his car to his proper lane and proceeded onward at a professed speed of about forty miles per hour. He declares he did not observe the cane truck until he was but forty feet away from it whereupon he applied his brakes and endeavored to swerve to the right. There being insufficient stopping distance and the swerving maneuver proving unsuccessful, the center of the front of the Wad-dell car struck the cane truck on the back of its right wheel. It is claimed that the Waddell car then “bounced” backward. At any rate, it landed in the ditch alongside the road. Waddell states no lights were visible on the rear of the cane truck and although his own headlights were illuminated, he claims he could not see the cane truck sooner than he did because it was “practically the same color as the highway in the darkness”.
Mrs. Waddell (who was seated beside her husband) and Kenneth Waddell related substantially the same story, both insisting the cane truck was unlighted and could not have been seen sooner. They stated that following the accident the cane truck came to rest some twenty to thirty feet beyond the point of impact. All' three appellants testified that when they observed the truck it was either stopped or was proceeding so slowly that its movement was imperceptible. '
Appellants produced two disinterested witnesses, one being Becnel, the driver of the school bus which Waddell had previously passed. Becnel was the first to arrive at the scene. He stated he saw the cane truck outlined in the beams of his headlights stopped some distance beyond the Waddell vehicle. He was unable to say if there were lights on the truck.
*488 A man named Smith next arrived at the scene. He testified he drove appellants to the hospital. He claims he did not observe the cane truck until he was in the process of making a U-turn to go in the direction of the hospital and that he does not know whether the cane truck had its lights “on”.
Deputy Sheriff Kleibert arrived soon after for the purpose of making an investigation. Seeing no one present he went to the hospital where appellants had been taken and then returned to the scene of the accident. He interviewed the cane truck driver and checked the truck lights and found them to he in perfect working order. Later, Deputy Kleibert with a fellow-officer, Miller, checked the truck’s lights at Abadie’s Service Station and again it was ascertained that the lights were in good order. This fact was affirmed by the owner of the service station.
Dillon, the driver of the truck, testified that just previous to the accident he had left Southdown Plantation, some three miles south, and had proceeded along the highway at about fifteen miles per hour with his front headlights, taillights, and two clearance lights on the left-hand side of the trailer “turned on.” The lights on the trailer are operated from the cab of the truck, the wiring system on the trailer being connected with that of the truck when the vehicles are coupled. Dillon stated he experienced no mechanical difficulty with his truck.
Dumas, another employee of Gravois, testified that his job was to check the tires and lights and to clean the headlights of the cane trucks when necessary. He maintains he examined Dillon’s truck prior to its departure and that all of the lights thereon, including the taillights, were in good order and working, and that he saw when it left the plantation entrance to go upon the highway that all of the lights thereon were illuminated and visible.
Counsel for appellants argue that the lights on the cane truck were not “burning” just before and at the time of the accident. He bases this conclusion on the testimony of Deputy Kleibert to the effect that Dillon told the officer that just previous to the accident he was having trouble with the truck and it was moving slowly and in a jerky fashion when the accident occurred. From this counsel makes the deduction that Dillon was having trouble with the ignition system and travelled without lights in order to keep the engine running by sparing the drain on the battery. Of course, this is pure conjecture.
The trial judge closed his reasons for judgment thus:
“ * * * The court was impressed with the sincerity of the testimony of Dumas and Dillon to the effect that the lights were burning just prior to the accident and is likewise impressed by the unrefuted testimony to the effect that the lights were in working order shortly thereafter.
“This being the case, it necessarily follows that the plaintiffs have failed to establish on the part of Dillon, by a preponderance of the evidence, negligence, and that their suit must therefore be dismissed.”
We are in full accord with the conclusions of the trial judge; we too are impressed by the testimony to the effect that the lights on the cane truck were working.
' We accord little weight to the testimony of the three appellants. A careful reading and comparison thereof shows that their statements, uniform in all details, are hardly without variation or discrepancy such as a court would normally expect to find in the testimony of eye witnesses in a case of this type. For instance Waddell, his wife, and his brother unanimously stated that their car was travelling at forty miles per hour, that they could see ahead in the beams of their headlights for a distance of one hundred fifty feet, and that although they were *489 looking forward, they did not see the unlighted cane truck until their car was only forty feet distant therefrom. The testimony of the three appellants has the appearance of having been rehearsed before hand. Certainly Cleo Waddell and his wife must have discussed the case many times. From the testimony of Mrs. Waddell and Kenneth Waddell, one would think they were most observant persons, but it appears that subsequent to the accident they failed to note a detail which, while in itself is unimportant, tends to throw doubt on the veracity of their testimony as a whole. They both said that after the accident the cane truck came to rest some twenty to thirty feet beyond the point of impact. This simply is not true. Their own witness, bus driver Becnel, testified that the cane truck was stopped at a distance of some two hundred to four hundred feet beyond the Wad-dell vehicle. Officer Kleibert, another plaintiff witness, estimated the distance separating the two vehicles to be more than one hundred feet. Dillon stated his truck was brought to a stop about one hundred to two hundred feet beyond the point of impact, and, by way of explanation as to why the truck travelled so far after the accident, he stated that the impact threw him forward against the steering wheel, and not knowing what had happened he continued onward for the distance above stated before deciding to stop.
The three appellants are in an identical situation, each seeking to recover damages ex delicto. In these circumstances their statements must be considered in the light of their interest in the case, and, whereas each is personally interested in a favorable outcome of this litigation, their combined testimony is of no greater probative value than the testimony of any one. There is no corroboration whatsoever by circumstances or from any disinterested witness. It seems to us the record supports the theory that there was no negligence on the part of the owner and driver of the cane truck as we are satisfied it was properly lighted at the time of the accident.
It is unnecessary, of course, to pass on the third party demand.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.