McBRIDE, Judge.
A collision between two automobiles took place at approximately 8:00 p. m., November 12, 1963, at the intersection of Citrus and Hammond Streets in the Gen-tilly Section of New Orleans, involving an automobile driven by Mrs. Diana Scott in which three passengers were riding and another automobile operated by Thomas F. Smith. Two suits for damages arose therefrom which were consolidated and tried by jury.
In the first suit (No. 2315 of our docket), the passengers in the Scott automobile, viz., Mr. and Mrs Charles H. Launey, Jr., individually, and on behalf of their minor child, Charles Launey, brought suit against Thomas F. Smith and his liability insurer, Allstate Insurance Company, for personal injuries and medical expenses; these plaintiffs charge Smith with several counts of negligence among which are that he was traveling at an unlawful rate of speed, that he failed to respect the preemptive right of way of the Scott car, that he failed to avoid the accident, and failed to see what he should have seen. Smith and his insurer answered the suit denying negligence on Smith’s part and alleging that the accident was caused through the negligence of Mrs. Scott in several enumerated respects which need not be detailed here. In the alternative the defendants plead that Mrs. Scott was guilty of contributory negligence, and in a third party demand the defendants implead Mr. and Mrs. Scott as their third party defendants and pray for judgment against them for contribution as joint tort feasors in the event Smith and his insurer are cast in judgment on the demands of the Launeys.
The other suit (No. 2316 of our docket) was brought by Mr. and Mrs. Scott against Smith and his said insurer. Mrs. Scott claims damages for personal injuries and her husband seeks to recover the medical expenses incurred as a result of his wife’s, injuries.
The jury’s verdict was that as against Smith and his insurer Mrs. Launey recover $1500, and that Mr. Launey recover $1670; the jury was of the opinion that no damages had been shown to have been sustained by their minor child and that the-demand made on his behalf should be dismissed; the jury allowed a recovery by Smith and his insurer against Mr. and Mrs. Scott for $1585 on the third party-demand; the demands of Mr. and Mrs. Scott against Smith and his insurer were-denied.
The court rendered one appropriate-judgment which adjudicated both cases and all demands in accordance with the-jury’s verdict. Mr. and Mrs. Launey, individually, and on behalf of their minor-child, appealed from the judgment contending that the awards to them individually were inadequate and should be increased and that the dismissal of their demand on behalf of their child was erroneous ; Smith and his insurer appealed from-the judgment insofar as it awarded the-Launeys any recovery whatsoever; Mr. and Mrs. Scott appealed from the portions of the judgment which dismissed' their demands and which cast them on the third party demand of Smith and his insurer.
Hammond Street, 40 feet in width, runs-east and west or uptown and downtown- and Citrus Street, 26 feet wide, runs from: the direction of the river toward the lake. Both are paved. Their intersection is uncontrolled by traffic signs, lights or other signals. Mrs. Scott was driving on Citrus toward the river; Smith was proceeding easterly or toward downtown on Hammond. In other words, Smith approached the intersection from Mrs. Scott’s right.
*157 The testimony reaching the jury as to the facts and circumstances surrounding the collision is conflicting. Mrs. Scott, driving her car, with her three passengers therein, entered Citrus Street from a driveway about three-quarters of a block from Hammond Street. She then maneuvered her car in the direction of Hammond Street and proceeded forward at 10 to IS miles per hour and upon nearing the Hammond intersection she slowed down to six to eight miles an hour. After almost stopping at a point about one foot from the edge of the intersection, and after looking for approaching vehicles in both directions on Hammond Street, she started forward, according to one statement “normally”, and according to another at six to eight miles per hour, and had traversed about three-quarters of the way across Hammond Street when her car was hit on the right front fender by the Smith car.
The crux of the case is how far from the intersection was the Smith vehicle when Mrs. Scott attempted her ill-fated crossing. She states that when she was one foot before reaching Hammond Street she saw the headlights of Smith’s car approaching thereon from her right lj4 to 1t/2 blocks distant; Mr. Launey saw the headlights one block away, and Mrs. Launey states that after the Scott car had emerged into the intersection a few feet she saw the headlights about two-thirds of a block away. The next street uptown or west from Citrus Street is Eunice Drive, which is 215 feet distant from Citrus Street. In other words, Mrs. Scott saw the headlights of the Smith car 265 feet away; Mr. Launey saw them 215 feet distant and Mrs. Launey saw them at a distance of 142 feet from the intersection.
There is no question that defendant Smith was exceeding the speed limit of 20 miles per hour established by local ordinance. He, a nonresident of this city, was only temporarily therein at the time the accident occurred and he frankly stated that he was unacquainted with the speed regulations controlling the movement of traffic on the city’s streets. Smith made conflicting statements as to how fast he was traveling. At the scene of the collision he told the investigating officers that he was driving at a speed of 30 miles per hour. Thereafter, in a written statement to an insurance adjuster, he estimated his speed at 22 miles per hour at the moment he saw the Scott vehicle. His third and last estimate was given from the witness stand. He declared he was traveling 25 miles per hour. It matters not which of said defendant’s approximations of his speed is accepted, he was traveling in excess of the lawful speed limit. We believe his statement to investigating officers that he was driving at 30 miles per hour is the correct version.
The only occupant of the Scott car who was able to testify as to the speed of Smith’s car was Mrs. Launey. She stated at one point in her testimony that it was moving at 15 miles per hour when she first saw it, but later she raised her estimate and said Smith was traveling 50 or 60 miles per hour. There was no basis for either estimate. In connection with her highest estimate Mrs. Launey stated that after the Scott car made entry into the intersection:
“A. * * * I was sitting with my my back to the door. And I turned like this, and I saw the car. And I turned and I looked that way. Well, we were going across Hammond. I looked back, and I screamed, ‘My God, he’s going to hit us,’ and just that quick we were hit. (Indicating.)”
Our impression is that Mrs. Launey had no idea of the speed of the other car.
It is contended by all of the damage claimants that the physical facts demonstrate that Smith was traveling at an excessive rate of speed and that he was a considerable distance from Citrus Street when he first observed the Scott car and *158 they point to the fact that there were skid marks 120 feet in length on Hammond Street claimed to have been laid by the tires on Smith’s wheels. One of the investigating officers testified that he discerned the skid marks by flashlight on the evening of the accident and measured them. Mr. Launey also stated that the day following the accident and on a later occasion he proceeded to the scene and was able to see the skid marks. His measurements thereof coincided with that of the officer. However, the evidence does not convince us that these skid marks were made by Smith’s automobile for the simple reason they did not lead up to the wheels of the Smith vehicle and there is no method by which anyone could have determined that the Smith vehicle left the marks. The officer endeavored to explain the situation by saying that Smith’s car must have ■“jumped” the skid marks, evidently meaning that the impact of the collision caused the car to shift away from the skid marks. Smith disavowed the 120-foot-long skid marks and maintained that his car left curving skid marks measuring IS or 20 feet in length.
Smith states that when he first saw the Scott automobile on Citrus Street he was SO or 60 feet from the intersection and that the Scott car was 25 feet from the intersection and it was slowing down as though it would stop. Assuming that the Scott automobile was going to stop, Smith retained his forward speed until the Scott car entered the intersection and then realizing it was not going to stop he applied his brakes and swerved to his right into Citrus Street in order to avert a collision, but to no avail and the crash occurred.
 In arguing Smith’s freedom from negligence his counsel takes the position ■that the speed at which Smith was traveling was only slightly in excess of the speed limit and was not a proximate cause of the accident and cites authorities in support thereof. We cannot agree that Smith’s violation of the speed regulation in this case was only technical and immaterial. It is only where the violation of the speed regulation does not contribute to the accident that excess speed is excused by the courts. See Whittington v. Gully, La.App., 164 So.2d 57. In this case, however, we believe that Smith’s speed of 30 miles an hour was a proximate cause of the accident and the violation of the ordinance was responsible to some extent for the accident. The excess speed prevented Smith from avoiding the collision. As his car traveled but eight feet after the impact he could undoubtedly have come to a timely stop at the slower speed within a distance of 60 feet.
His counsel also contends that Smith had the directional right of way as provided by § 38-133 (b) of the New Orleans City Code, 1956, in that Mrs. Scott was to Smith’s left and should have yielded the right of way to his car. In view of the rate of speed at which Smith was traveling he cannot be heard to claim the right of way as his violation of the speed ordinance deprived him thereof. It has been held many times by appellate courts that a motorist who travels at an excessive speed forfeits the statutory directional right of way. Graves v. Hartford Accident and Indemnity Company, La.App., 188 So.2d 173; Ball v. Marquette Casualty Company, La.App., 176 So.2d 799; McWaters v. Turnage, La.App., 156 So.2d 68.
We cannot believe that when the Scott automobile reached the intersection Smith’s car was as far away as Mrs. Scott and her passengers pretended. For instance, Mrs. Scott said that Smith was 1}4 to I14 blocks away; Mr. Launey said Smith was one block distant from the intersection, and Mrs. Launey claims that after the Scott car had emerged into the intersection she saw the headlights of the other car about two-thirds of a block away. If the Smith car had been as close as two-thirds of a block away Smith would have had to traverse 142 feet while Mrs. Scott *159 only negotiated 30 feet for the vehicles to collide. This would make the speed of Smith’s car more than 45 miles an hour. If Mrs. Scott was correct in saying that Smith was 1*4 or 1}4 blocks away, Smith would have had to travel 89 miles an hour to the point of collision, and if Mr. Launey was right in saying that Smith was one block away, the latter would have had to travel 70 miles an hour in order to strike the Scott automobile. Our appreciation of the testimony is that the occupants of the Scott car incorrectly placed the Smith car at such distance from the intersection when Mrs. Scott arrived thereat. We believe Smith’s automobile which was traveling at not more than 30 miles per hour was not more than 50 or 60 feet away.
It is claimed on behalf of Mrs. Scott that whereas she had traversed three-quarters of the intersection she had attained a pre-emptive right of way and that Smith was grossly negligent in not respecting same and crashing into her. According to Mrs. Scott’s own testimony she came to a virtual stop at the intersection when as a matter of fact the Smith automobile was in close proximity thereto. Prudence should have dictated to her that she remain stationary at the intersection until the Smith car passed. She must have known, or should have known, of the speed at which the Smith vehicle was traveling and that she could not cross the intersection before it at eight to ten miles per hour. In these circumstances courts have often said that pre-emption does not result from merely entering the intersection first. In order to pre-empt an intersection the driver of the car who claims to have preempted it must show that he entered it sufficiently in advance of the car on the intersecting roadway to permit a safe passage and under the belief and with the expectation that he can safely negotiate a crossing. Ehtor v. Parish, La.App., 86 So.2d 543.
There is a circumstance present in the case which cannot escape notice. All plaintiffs are related. In view of this their statements must be considered in the light of their interest in the case, and, whereas each is personally interested in a favorable outcome of this litigation their combined testimony is of no greater probative value than the testimony of any one. There is no corroboration whatever by circumstances or from any disinterested witnesses. See Waddell v. Gravois, La.App., 187 So.2d 486.
It seems to us the record supports a holding that Mrs. Scott was contrib-utorily negligent in attempting to cross the intersection as she did, and, of course, a recovery by her and her husband is barred.
The jury found negligence on the part of Smith and the only basis'on which it could have dismissed the suit of Mr. and Mrs. Scott and cast them on the third party demand was that Mrs. Scott was contributorily negligent in the accident. In resolving the question of veracity the jury undoubtedly believed the testimony of Smith rather than that of the plaintiffs. There would be no reason for us to say it it should have been otherwise. We believe that the findings of the jury are supported' by the evidence and that it was proper for the trial judge to approve the verdict and render judgment premised thereon. But even if we were in doubt as to the soundness of our views, we would be inclined to concur in the findings of the jury as to liability as it has been repeatedly held that a jury’s finding of fact (especially where the veracity of witnesses is involved), when approved by the trial judge, will not be disturbed unless it appears the finding was manifestly erroneous. Futrell v. Pacific Indemnity Company, La.App., 79 So.2d 903, and cases cited therein. Certainly no such error is apparent.
Mr. and Mrs. Launey are entitled to a recovery from the defendants. The former’s injuries on the initial examination by Dr. Dugas the second day after *160 the accident were found to consist of a contusion of the right shoulder and right hip. A re-examination revealed tenderness in the lower back and some muscle spasm. There were no fractures or bone pathology. The patient was given diathermy to his lower back and advised to -use a hard bed. He was under treatment ¡by Dr. Dugas for about 45 days. Mr. 'Launey undoubtedly suffered some pain 'but fortunately was able to pursue his occupational duties as insurance salesman. His medical costs amounted to $290 and 'the medical expenses incurred on behalf -of his wife amounted to $405, or a total of $695. The judgment awarded Mr. Lau-ney $1670 in a lump sum, and we think that amount fully compensates him for his .injuries and medical expenses.
Mrs. Launey was also examined by Dr. Dugas two days after the accident and her complaints were pain in the neck, lower abdomen, shoulders, nausea and-'headaches. Dr. Dugas was of the opinion that she had sustained a sprain of the cervical spine and sprain of the lumbar •spine. Her treatment consisted of the •wearing of a Thomas neck collar, physiotherapy to the neck, shoulders and lower ■back and traction in the doctor’s office. Muscle relaxants, pain killing drugs, tran•quilizers and anti-nausea medication were prescribed. The doctor last saw Mrs. Launey January 10, 1964, after 17 visits. ¡She was asymptomatic and all treatment 'was discontinued. Mrs. Launey claims she •suffered abdominal pain for a year after the accident. In December 1964 she consulted Dr. Bourgeois who examined her ■and found no objective symptoms which would warrant the subjective complaints. We are not satisfied that Mrs. Launey’s complaints of pain after her discharge by Dr. Dugas are attributable to the accident. Mrs. Launey was unable to pursue her occupational duties for about ten days but no claim is made for any loss of wages. The jury awarded her $1500 for the injuries, pain and suffering and we think that such award was neither excessive nor inadequate.
We have no good cause for saying that there was any abuse of discretion in the awarding of damages to Mr. and Mrs. Launey.
On behalf of young Launey, it is claimed he sustained injuries in the accident. He was thrown across the seat against his father. He did not seek medical attention until five days after the accident and Dr. Dugas’ finding was that the boy had no objective symptoms. On December 4, 1963, Dr. Dugas re-examined young Launey and found that he had a hernia in the upper middle portion of the abdomen and it is claimed that this condition resulted from the trauma. We have carefully read the medical testimony adduced by both sides with reference to the hernia and our conclusion is that the accident did not cause or superinduce the hernia or aggravate a pre-existing condition. The jury also believed this. The evidence discloses that young Launey was an athlete who played football and indulged in weight lifting and in view of this, and taking into consideration the conflicting medical testimony, we are unable to say that the boy suffered the condition complained of as a result of the accident.
The jury evidently was of the same mind. The denial of the claim for damages on his behalf was proper.
Smith and his insurer were allowed a recovery of $1585 on the third party demand which amounts to one-half of the awards made to Mr. and Mrs. Launey. This was proper.
For the reasons above assigned, the judgment appealed from is affirmed in toto.
Affirmed.