HALL, Judge.
Plaintiff, a member of the New Orleans Police Department was injured on February 13, 1966 when the police squad car which he was driving was rear-ended by an automobile owned and driven by James E. Choppin. As a result thereof plaintiff filed this suit for damages against James E. Choppin and Global Underwriters Incorporated alleged to be Choppin’s public liability insurer. At the trial Fidelity General Insurance Company, Choppin’s actual insurer, was by agreement between counsel substituted as a defendant in the place of Global Underwriters Incorporated.
Following trial on the merits judgment was rendered in plaintiff’s favor and against James E. Choppin and Fidelity General Insurance Company in solido in the sum of $3,210.00, representing $2,500.00 for pain and suffering and $710.00 for special damages.
Defendants appealed. Plaintiff answered the appeal praying that the amount of the judgment in his favor be increased to the sum of $4,710.00.
Liability is conceded by defendants. The sole issue presented for our determination is whether plaintiff has proved the injuries he received were a direct result of the collision and whether he has proved his damages by a preponderance of the evidence and to the degree required by law.
Plaintiff testified that he was travelling about two to three miles per hour coming to a stop when the squad car he was driving was struck from the rear by Choppin’s automobile; that his back was injured as a result of the collision and that he complained of pain to the officer accompanying him. As required by regulations he telephoned Accident Investigation and an investigation unit consisting of two officers was sent to the scene. Shortly after their arrival a scuffle broke out in front of a lounge located nearby and the officers (four in number including plaintiff) went to break it up. The officers had to subdue *247 one of the participants in order to handcuff him.
The accident happened about 2 o’clock on Sunday morning. Plaintiff testified that because his back was hurting he went home and tried unsuccessfully to contact the Police Department doctor; that he remained in bed all day Sunday and went to see Dr. Charles Midlo, his family physician, about 8 or 9 o’clock Monday morning.
Dr. Midlo was unable to testify at the trial on account of serious illness. However, his discovery deposition was introduced and admitted in evidence. Dr. Midlo’s deposition revealed that plaintiff consulted him between 8 and 9 o’clock on Monday, February 14, 1966 complaining of severe back pain. Dr. Midlo examined plaintiff and found him suffering from severe pain and tenderness over the lumbar spine. He stated that plaintiff had muscle spasm in his lower back but his findings of muscle spasm were based on the pain plaintiff was suffering. X-rays were negative. He prescribed heavy sedation, codine and aspirin.
Plaintiff was seen by Dr. Midlo again on February 16. His pain appeared to be worse in spite of the codine so the doctor prescribed Darvon Compound # 5. On February 23 there was no change in plaintiff’s condition. On March 2, plaintiff’s pain was worse. Dr. Midlo prescribed a lubo-sacral belt.
Dr. Midlo saw plaintiff weekly thereafter until April 23, 1966. He gave plaintiff infrared heat treatments in his office starting with March 13 and prescribed stronger sedation on March 23 but plaintiff was still complaining of severe back pain on April 23 although he got some relief while wearing the lumbo-sacral belt.
Dr. Midlo went to Europe on his vacation and did not see plaintiff from April 23 to September 3.
On plaintiff’s March 16 visit Dr. Midlo told him he could go back to work if he could get light duty. At this time there was still no change in plaintiff’s complaints. Plaintiff returned to work on May 3, 1966 and was assigned limited duty in the record room.
On June 26, 1966 plaintiff fell coming out of his back door and scraped his left leg on a piece of wood. A few days later his leg began to pain him severely.
Plaintiff testified that on July 4 he “took off from work” because he was feeling bad and needed rest. The Police Department records show that plaintiff made a furlough request in writing on July 5 and was carried on furlough through July 12.
On July 12 plaintiff was admitted to Veterans Administration Hospital for a badly ulcerated left leg. Examination there revealed that he had diabetes which was preventing his leg from healing.
On July 13 plaintiff had his furlough changed to sick leave and was carried on sick leave by the Police Department until September 11, 1966. Thereafter plaintiff took annual leave from September 12 to October 2, then, following two days sick leave, plaintiff went hack on annual leave because he had exhausted all of his sick leave.
On September 30, 1966 plaintiff made a formal written request for transfer from the Third District to the Headquarters Communication Division giving as his reasons that he lacked only 3i/£ months for completion of 20 years service with the Police Department and that he was “* * * now a diabetic, which condition has caused him to lose thirty-five pounds in the last few months. Also Patrolman Blanque has had feet which, due to the diabetic condition, heal very slowly. Officer Blanque must wear white socks and canvass shoes * * *”
Meanwhile plaintiff had seen Dr. Midlo on September 3, 1966 and told him he had been hospitalized for diabetes. Dr. Midlo saw him again on September 6, September 14, October 5 and December 6 and checked his urine on each occasion. Although Dr. Midlo found him still suffering with his *248 back the doctor stated that he was more concerned with plaintiff’s diabetic condition.
Following his discharge by Dr. Midlo on December 6, 1966 plaintiff took time off from December 21, 1966 to February 13, 1967 for a rest to determine whether that would help him feel better. He testified that he did not recover from his back injury until some time in 1968.
Defendants contend that plaintiff has not borne the burden of proving that his injuries were sustained in the automobile accident and suggest that he may have injured himself in assisting the other three officers subdue one of the participants in the street scuffle. Moreover, defendants contend that the impact of the rear-end collision was so slight that plaintiff could not have been injured thereby.
The man arrested by the four officers weighed only about 140 pounds and the record contains no testimony whatever which would tend to show plaintiff was injured in assisting in the arrest. While the defendant, Choppin, testified that he only noticed damage to the left rear tail light of the squad car, he did not examine the car for other damage.
The Trial Judge believed plaintiff’s testimony as to the cause of his injury. Moreover, defendants have admitted liability.
Defendants contend that the Trial Judge’s award of $2,500.00 for plaintiff’s pain and suffering is excessive and should be reduced. While we are of the opinion that the award is generous we are unable to say that the Trial Judge abused the “much discretion” vested in him by LSA-C.C. Art. 1934. See Lomenick v. Schoeffler. 250 La. 959, 200 So.2d 127.
The Trial Judge awarded plaintiff $710.-00 for special damages without indicating how he arrived at that figure.
All of plaintiff’s medical and hospital expenses were paid by the Police Department and he lost none of his regular patrolman’s salary. However, he testified that during his illness he lost the $40.00 per month compulsory overtime pay he had been receiving regularly up to the time of his accident, and since a police officer on limited duty cannot accept special details or assignments he lost all of the special assignments he regularly received. In this connection he testified that each year for 15 years he had been assigned to the Pickwick Club during the Carnival season for which he received $150.00 for the week. He testified that he lost this assignment in 1966, 1967 and 1968 because of his injury. He also testified that he lost $150.00 from not being able to accept assignments to Tulane football games and $60.00 from Sugar Bowl games during each of the years 1967 and 1968 and that he lost New Year’s Eve assignments to the Roosevelt Hotel in 1967 and 1968.
We are of the opinion that plaintiff is entitled to the sum of $186.67 as compulsory overtime pay lost by him during the approximate 4^ month period from February 13, 1966 to July 4, 1966 during which time he was carried on the Police Department payroll as injured on duty. We are also of the opinion that he is entitled to $150.00 for missing the 1966 Carnival assignment to the Pickwick Club. We are of the further opinion that from and after July 4, 1966 all losses of overtime pay, furlough and sick leave time and all losses of special assignments were due to plaintiff’s ulcerated leg and diabetic condition and not to his accident of February 13, 1966.
For the foregoing reasons the judgment appealed from is amended by reducing the amount awarded plaintiff from the sum of $3,210.00 to the sum of $2,836.67 and as so amended and in all other respects the judgment is affirmed; costs of this appeal to be borne in equal proportions by plaintiff-appellee and defendants-appellants.
Amended and affirmed.