SAMUEL, Judge.
This is a suit for damages resulting from an automobile accident. Plaintiffs are the driver and two guest passengers of one of the two vehicles involved and defendants are the owner-driver of the other vehicle and her liability insurer. Defendants answered, denying liability, and pleaded the doctrine of sudden emergency.
Following trial on the merits judgment was rendered in favor of the three plaintiffs and against the two defendants, in so-lido. For their respective injuries (not including special damages) the judgment awards: $3,000 to Gilbert W. Herndon, plaintiff-driver; $500 to John A. Schilleci, one of the plaintiff guest passengers; and $3,000 to Doyle A. Bridges, Jr., the other plaintiff guest passenger. Defendants have appealed. In this court they contend: (1) as the doctrine of sudden emergency is applicable, there is no liability on the part of the defendants; and, alternatively (2) the awards for personal injuries above set forth are excessive.
The accident took place at approximately 8:15 a. m. on December 16, 1965 in the northbound lanes of Airline Highway in the Parish of Jefferson just north, or on the Baton Rouge side, of that highway’s intersection with North Atlantic Street. It was raining and the roadway was wet. The plaintiff vehicle was proceeding toward Raton Rouge in one of the two lanes reserved for northbound traffic and the defendant car was traveling toward New Orleans in one of the two lanes reserved for southbound traffic. The two sets of traffic lanes were divided by a narrow neutral ground. The collision occurred when the defendant automobile, skidding out of control, crossed the neutral ground and struck the plaintiff vehicle.
Testimony relative to the manner in which the accident happened was given by three of the litigants. One of the plaintiffs, Schilleci, did not see the accident because he occupied the front seat next to the driver, Herndon, and was facing and talking to Bridges, the third occupant of the plaintiff vehicle, who was in the back seat.
The testimony of Herndon and Bridges was substantially as follows: They were driving on Airline toward Baton Rouge in the traffic lane next to the neutral ground. At the intersection of North Atlantic they stopped for a red light behind an unidentified vehicle which also was stopped in obedience to the light. When the light changed the unidentified vehicle turned left on North Atlantic and they proceeded ahead at a speed of about 5 to 8 miles per *725 hour. At that time the defendant vehicle, which was in one of the opposite lanes of traffic proceeding toward New Orleans at a speed of approximately 35 miles per hour, went into a skid. Fearful that the defendant car would jump the neutral ground, the plaintiff-driver attempted to move into the outside northbound lane to avoid an accident. The defendant vehicle then ran across the neutral ground and the collision occurred in the lanes reserved for northbound traffic.
The defendant-driver testified she was traveling south, toward New Orleans, on Airline at a speed of approximately 30 to 35 miles per hour in her right or outside lane of traffic. It was raining hard, visibility was poor, and her vehicle’s headlights were lit. Because the traffic light at North Atlantic was red, she slowed down as she approached the intersection. When she was about one-half block from the light it turned green and she resumed her former speed. At that time she observed a vehicle in her rear view mirror overtaking her in the left lane. As that car passed, she saw the left turning vehicle in the opposite lane, which had been stopped at the light ahead of the plaintiff car, cross her path of travel in the southbound lanes of Airline. She put on her brakes about one and one-half to two car lengths from the intersection and pulled to the right, but realizing this would cause her to strike the left turning vehicle, swerved to the left and ran across the neutral ground, striking the plaintiff vehicle.
The trial judge found portions of the defendant-driver’s testimony unbelievable. In reasons dictated immediately following the trial he stated he was convinced she was a sufficient distance away from the intersection when the left turning vehicle was crossing so that, if she had been keeping a proper lookout and had her car under control, by proper driving she could have avoided a collision with the crossing automobile without skidding. He concluded the negligence of the defendant-driver was the sole and proximate cause of the accident. From out review of the record we agree with the finding and conclusion. The doctrine of sudden emergency cannot be invoked successfully by one whose negligence has brought about or contributed to the emergency. Pitre v. Thibodeaux, La. App., 200 So.2d 360, and cases cited therein.
With regard to quantum for personal injuries, it is now established that each case must be decided largely on the facts and circumstances surrounding the particular injuries involved and that amounts of awards in similar cases are relevant for the exclusive purpose of determining whether the award is so excessive or so inadequate as to constitute an abuse of the “much discretion” vested in the trial court. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127.
Schilleci, the passenger seated next to the driver, cut his knees, face and clothes with flying glass and hit his back on the door of the vehicle. The day after the accident he consulted Dr. John L. Di Leo, who cleaned the cut on his knee and applied medication and a bandage. Schille-ci complained of his back and was told to apply heat and to use a bed board. The pains persisted for several months after the accident. We are of the opinion his award of $500 is not excessive and was within the wide discretion allowed the trial court.
Herndon, the plaintiff-driver, fell against Schilleci on impact and then bounced back up. The rim of the side window was around his head and shoulders when his vehicle came to a stop. He was taken directly to a hospital where he was seen by Dr. Robert Bernhard. This doctor saw him three times thereafter as an outpatient and he received five physiotherapy treatments for injuries to the left shoulder, back of his neck and headaches. He was *726 later examined and treated by Dr. Myron C. Greenleaf.
Dr. Greenleaf testified he saw Herndon on December 28, 1965, twelve days after the accident, for pains in the left side and back of the head and neck, radiating into both shoulders. X-rays taken at the time were negative for fracture. Physical examination revealed moderate tenderness and spasm along the posterior cervical and trapezius region. Treatment consisted of ultra sound, muscle relaxants and analgesics. Therapy started on January 7, 1966 and continued on several occasions to April 5, 1966, with progressive improvement. The doctor recommended a cervical collar which plaintiff used for seven or eight weeks.
Herndon was treated thereafter for various respiratory ailments unrelated to the accident until April 17, 1967. However, he advised the doctor over this period that he had some increase in discomfort at the back of the neck. The doctor was unable to say whether complaints from April, 1966 through August, 1967 were due to the injury or to muscle irritation from the upper respiratory infection for which he was treated. In August, 1967 plaintiff returned with complaints of headaches. Neck x-rays were again taken. There were no changes over the previous x-rays taken in 1965. Physical therapy was resumed. The doctor stated headaches frequently occur for a matter of some years and discomfort is noted during temperature changes.
We have examined other cases involving somewhat similar injuries, including: Barrios v. Noto, La.App., 215 So.2d 676; Trahan v. Lewis, La.App., 223 So.2d 511; and Glass v. Aetna Casualty and Surety Company, La.App., 166 So.2d 552. We conclude that the $3,000 award to Herndon is not so excessive as to constitute an abuse of the trial court’s discretion.
Doyle A. Bridges, Jr., the passenger in the rear seat, received cuts on the face, hands and both knees. He was taken to a hospital where he was seen by Drs. Robert Bernhard and M. D. Paine. Four sutures were required to repair the cuts on his knees. After his discharge, he was seen on only two other occasions by Dr. Paine, who treated him for his knee injury and for low back pain which manifested itself two days after the accident.
On January 1, 1966 Bridges consulted Dr. C. J. Haindel, an ear, nose and throat specialist, for headaches. Bridges then moved to Baton Rouge and there consulted Dr. Richard B. Means, an orthopedist, on March 29, 1966. He saw Dr. Means thereafter on April 5 and April 22, 1966. Although Dr. Means could find no objective evidence of plaintiff’s complaints, his report indicates that because plaintiff complained of his knees and low back pain, treatment by medication and physical therapy was recommended. It is not clear whether this treatment was for the back or knee injuries. He received no medical treatment from Dr. Means after April 22, 1966. However, according to a bill in the record, physical therapy continued to May 2, 1966.
We are not impressed with the medical evidence supporting this plaintiff’s claim. None of the doctors who treated him after the accident were called to testify. While other witnesses confirm Bridges’ knee injuries, the only medical evidence of a back injury, other than plaintiff’s self serving testimony, is a bill for an x-ray of the lumbar spine on December 22, 1965 and the medical report of March 29, 1966. This report indicates the doctor could find no objective evidence of plaintiff’s complaints in March but nevertheless recommended therapy. It further indicates Bridges had suffered from headaches for a period of eight years, long prior to the accident. One of Bridges’ main complaints at this time is severe headaches. Medical evidence does not indicate that these are a result of the accident or that the accident may have aggravated a preexisting condition.
Bridges saw Dr. Haindel for headaches on January 4, 1966, yet Dr. Haindel was *727 not called to testify. Bridges testified he complained to Dr. Paine and was treated by him for his knees and low back pain. Dr. Paine, a New Orleans physician, was not called to testify. It is not clear whether physical therapy was received for the back or the knees.
Bridges testified he received daily physical therapy treatments for over a month, but the bill simply does not bear this out. Nor is his testimony relative to his injuries and medical treatment by the other doctors convincing.
We are of the opinion that this plaintiff has established slight injuries resulting from the accident, involving cuts to' the knees with some residual scars as a result of these cuts, low back pain, and cuts of the face and hands. He has not sustained his burden of proof that the residual headaches are the result of the accident, or that his back injury is of a serious nature. We are of the opinion that the $3,000 award to Bridges is excessive and that $1,500 would adequately compensate him for pain and suffering. As the total award to Bridges was $3,383 (which included $383 for special damages), we will reduce the same to $1,883. See Blanque v. Choppin, La.App., 225 So.2d 245; Rogers v. Great American Insurance Co., La.App., 220 So.2d 198; Diebel v. Houston Fire & Casualty Insurance Co., La.App., 216 So.2d 633; Launey v. Smith, La.App., 192 So.2d 154; Liles v. Midwest Piping Company, La.App., 151 So.2d 584.
For the reasons assigned, the judgment appealed from is amended so as to decrease the amount awarded to Doyle A. Bridges, Jr. from the sum of $3,383 to the sum of $1,883. As thus amended, and in all other respects, the judgment appealed from is affirmed; costs of this appeal to be shared equally between defendants-appellants and plaintiff-appellee, Doyle A. Bridges, Jr.
Amended and affirmed.