Weintz et al. vs. Kramer et al.

## No. 10,911.

### MRS. MARIA WEINTZ ET AL. VS. PETER J. KRAMER ET AL.

44  35
o108 187
44  35
117 445

1. The prescription of one year is not applicable to an action brought upon the bond of a notary public for failure to perform the duties incumbent on him.

2. The obligations of the bond of a notary public in New Orleans are governed by Section 2521, R. S , which is a special statute with reference to notaries of this parish, and which has heretofore been construed by this court to extend liability in favor of persons other than those who actually employ the notary.

3. A bond for the "faithful performance" of duties voluntarily assumed and done for personal profit involves something more than mere honesty—it involves care, attention, diligence and reasonable competency.

4. The decision in Weick vs. Henne, 41 An. 1153, is vindicated and approved.

5. A notary undertakes the confection of a testament by public act, with full knowledge that its validity depends on the most exact fulfilment of the formalities required by law. He is reminded of this and guarded by the requirement to make "express mention" of these formalities, and that they have been complied with. The formalities are clearly and plainly stated, and the notary has only to follow the language of the law to be safe. If he chooses to deviate from the law and to substitute language of his own choice to convey the same meaning, he does so at his own risk and can not throw resulting loss on innocent persons.

6. The measure of plaintiff's loss is the amount which she would have received on her legacy after payment of succession debts and privileges. Where the succession has been administered and an account rendered and homologated, such judgment must be accepted as *prima facie* correct, and throws upon plaintiff the burden of proof in any attack on the items of the account.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*A. L. Tissot* and *Henry P. Dart* for Plaintiffs and Appellees:

1. When a notarial will is annulled because the notary failed to state the residence of the witnesses after the manner required by the statute, he is liable to the legatee whose legacy fell as a result of said annulment.

2. The sureties on his official bond are responsible *in solido* with him. Rochereau vs. Jones, 29 An. 82; Schmitt vs. Drouet, 42 An. 1084; Dalloz, Vol. 39, p. 349, *et seq.*, Nos. 302-307, 389, *et seq.*, Nos. 424, *et seq.; Idem*, Vol. 8, pp. 1-26-29.

3. The action by such a legatee is *ex contractu.* Fox vs. Thibaut, 33 An. 33. Should it be held *ex delicto*, the cause of action begins at the rendition by the Supreme Court of the judgment annulling the will. Hotard vs. R. R. Co., 36 An. 550; Scott vs. Seslye, 39 An. 749.

*A. J. Lewis, W. S. Benedict, H. Heidenhain* and *E. Warren* for Defendants and Appellants:

1. This is an action sounding in damages and prescribed in one year, dating from the death of the party from whom rights are claimed. C. C. 3536, 3537; 31 An. 529; 6 Robinson, 384, 566; Code Napoleon, Art. 1382.

2. A notary public exercises a profession, and is not responsible in damages for mistakes in language in the reception of a nuncupative will by public act. Any losses resulting therefrom are *damnum absque injuria.* Act April 8, 1868, 16th La. 312; 5 An. 282; 23 An. 710; 29 An. 82.

3. If liable, responsibility exists in favor of contractor and heirs, not legatees. 42 An. 1064.

4. Prescription of one year from date of death in action brought as for property prevails more particularly when such property is not described nor identified.

---

The opinion of the court was delivered by

FENNER, J.    The plaintiff was a legatee of the late Frank P. Burger, who bequeathed her two lots of ground, with the improvements, in New Orleans.

Burger's will was taken in nuncupative form by public act before Peter J. Kramer, Esq., notary public.    The will was subsequently attacked by certain of the heirs, and the same was annulled by this court upon the express ground " that the notary who executed it failed to state that the attesting witnesses were residents of the parish of Orleans, the place where the same was executed.    See 41 An. 1153.

Being ousted of the legacy under this decision, she brings an action against Kramer and his sureties for the value of said legacy, alleging that she has lost the same by reason of the fault, negligence, imprudence and want of skill and inattention to his business of the said notary.

There is no dispute that Kramer was regularly appointed a notary public by the Governor; that Thuem and Hassinger were his sureties on his official bond.

The condition of this bond is that the notary " shall well and faithfully discharge and perform all the duties incumbent upon him in and for the parish of Orleans, and for the faithful performance of all duties required by law toward all persons who may employ him in his profession as notary in accordance with the act relative to notaries."

The petition was met by exceptions of prescription of one year and no cause of action.

The plea of prescription is disposed of by our decision in a like action upon the bond of a notary, where we said: " The prescription of one year is based on the hypothesis that the action is one for damages for a quasi offence.    We are not concerned here with the

question as to whether defendant's breach of duty was, or not, technically a quasi offence. The action is on a bond, and, therefore, *ex contractu*, to which the prescription invoked is not applicable." Brigham vs. Bussey, 26 An. 676; Fox vs. Thibaut, 33 An. 33.

The exception of no cause of action is based upon the idea that the obligations under the bond are governed exclusively by the terms of Section 2503 of the Revised Statutes, which provide that the notary's bond shall be " conditioned for the faithful performance of all duties required by law toward all persons who may employ him in his profession of notary," and, therefore, that as plaintiff did not employ this notary and the petition does not so allege, it sets forth no breach of the bond and no cause of action thereon. Without deciding that this would be a proper construction of this statute, it is sufficient to say that, with reference to notaries in the parish of Orleans, the broader requirement of Act No. 609 of 1857 is reproduced and held in force by Section 2521 of the Revised Statutes, which exacts a bond conditioned " for the faithful performance of his duties." The bond in this case, as shown by our above quotation of its terms, was evidently framed to comply with requirements of both these sections. The effect of the condition prescribed by the Act of 1857, and Section 2521, Revised Statutes, has already been construed by this court. The suggestion that it applied only in favor of persons employing the notary was repudiated, and the court said: "The Act of 1857 fixes, as the broad and legitimate condition of the notary's bond, that he shall faithfully perform his duties in that capacity." Rochereau vs. Jones, 29 An. 84.

There can be no doubt that this bond, given by a notary of New Orleans, is governed by Section 2521, Revised Statutes, which is a special statute applying exclusively to notaries of this parish and must prevail over the general provision of Section 2503, which applies to the notaries of the State, generally. We observe that Section 2521 has been again reproduced in the latest act touching notaries in New Orleans, Act No. 42 of 1890.

If the contentions of defendants were well founded there would be no liability under the notary's bond for any fault or misconduct however gross in that most important of all notarial functions, the confection of testaments. No one could be injured by the nullity of the testament except the legatees, and as they are not the persons who employed the notary, they would have no recourse.

The further legal defence is interposed that the bond does not guarantee the competency of the notary, but only his fidelity and honesty. Such is not the tenor of the bond, which is conditioned that the notary " shall *well* and faithfully discharge and perform all the duties incumbent upon him," etc.

Our jurisprudence recognizes no such restriction, but has held the notary and his sureties responsible for faults of omission or commission unattended with any suggestion of fraud or dishonest intent. Brigham vs. Bussey, 26 An. 676. Fox vs. Thibaut, 33 An. 33.

In a later case we distinctly said: "The stipulations which the bond contains constitute the contract entered into, and must be strictly construed. The object contemplated was to make certain that the notary would discharge well and faithfully all the duties incumbent upon him, and in case of his failure to do so, and loss was sustained thereby, to hold the surety liable. * * * Before the notary and his surety can be held, it is necessary to inquire whether the act done or not done, committed or omitted, was or was not authorized by law, was or was not *incumbent* upon him, was or was not *required* of him, whether he was directed to do it, whether he has failed to discharge his duty, and whether injury has been sustained." Schmitt vs. Drouett, 42 An. 1064.

It is true that the State takes certain other precautions to secure the competency of notaries by having them examined, etc., but, not content with these, it adds the obligation of the bond to protect people who are interested in the due and proper performance of their duties. That protection would amount to little if it only guarded against intentional dishonesty and fraud.

Although the statute only requires a bond for "faithful performance," such "faithful performance" of duties voluntarily assumed and carried on for personal profit involves more than mere honesty —it involves care, diligence, attention and reasonable competency.

The defendants next deny that the notary here committed any fault, and they assail the correctness of the decision of this court in Weick vs. Henne, 41 An. 1153, which annulled the will. As defendants were not parties to that suit, they are not technically bound by the judgment. But we see no reason to change the conclusion therein reached. If it was a strict application of the law, it was made in a matter in which, above all others, the law enjoins and re-

quires the utmost strictness. Baudry la Cantinerie, in his admirable commentary on the French Code, says: "The most common cause for annulling testaments by public act is for want of or defect in the *express mention* (of fulfilment of the forms required). It would be wrong to blame the courts for the severity with which they enforce this requirement, because that only manifests the respect for the authority of the law which inspires their decisions. The blame, if any, ought to rest upon the legislator, who has perhaps exceeded the just measure of rigor in regard to these formalities." 2 Baudry la Cantinerie, Droit Civil, No. 561.

We rest our decision in the case referred to upon our respect for the authority of the law, which requires that express mention should be made that the witnesses were persons "residing in the place where the will was received," meaning thereby residing in the same parish. To say that they were "witnesses residing in the neighborhood" certainly does not fill the requirement, and the reasons are sufficiently given in the opinion.

Finally, it is contended that such an error on the part of the notary is not a fault of so grave a character as to subject him to responsibility, being a mere error of judgment which a discreet and diligent man might have committed. We have no desire to exaggerate the fault of the respectable notary who acted in this case. But his error was sufficiently grave to entail the nullity of the will and to subject the plaintiff here to the loss of her legacy.

He knew that the validity of the will depended upon the most exact and scrupulous fulfilments of the formalities prescribed by law. The directions of the law are precise and unambiguous. He had only to use the terms of the law itself to be absolutely safe. If he chose to substitute other terms, he did so of his own motion and at his own risk, and can not throw the resulting loss on innocent persons who had the right to rely on his proper performance of the duties incumbent on him. The words of the statute are not sacramental, but the words used must be such as *expressly* declare fulfilment of the formalities. "Implication is not to be resorted to unless, at least, it be an implication necessarily involved in the meaning of the express words used." Succession of Rosa Vidal, *Ante,* p.—.

It is important that notaries should be impressed with the gravity of their responsibility when they undertake the confection of testa-

ments which involve the devolution of entire estates and the execution of the final wishes of the *de cujus* with regard to those who come after them.   They know that their validity depends on the strictest compliance with the law, and they should follow the plain letter of the law, or assume the responsibility of any deviation. The very object of the requirement of " express mention " is to guard them against neglect or forgetfulness, and to fix their responsibility.

Under the French law, from which our system is derived, we are referred to many authorities unequivocally upholding the responsibility of notaries for such errors.   Dalloz Repertoire, Vol. 39, Nos. 302, 307, 389, *et seq.*, and 424; *Id.*, Vol. 8, pp. 1-26-29, where the authorities and decisions are referred to.   We conclude, therefore, that the judge *a quo* did not err in holding defendants responsible for the damage suffered by plaintiff.

The measure of this loss is the amount which plaintiff would have received had the will been valid.

It appears that the succession of Burger (the *de cujus*) was duly administered.   It consisted exclusively of the real estate bequeathed to plaintiff and to another legatee, which was sold under order of court and realized (with some rentals) the sum of $2505.   The administrator filed an account, showing disbursements on account taxes, privileges, costs, etc., and leaving a net balance of $939.55. Amongst the liabilities on the account allowed by the court was an item of $500 paid to the widow " as per compromise."   The judge *a quo* thought the defendants carried the burden of proof to show the correctness of this payment.   We consider it fairly presumable that the court allowed  the item as due to the widow, either in payment of a debt due or of her privilege as widow in necessitous circumstances, in either of which cases the claim would prime the legacies.   The defendants are entitled to the benefit of the presumption that this judgment of the court was correct, and if plaintiff desired to attack it, the burden of proof was on her.   We must, on this ground, amend the judgment.

It is, therefore, adjudged and decreed that the judgment appealed from be amended by reducing the amount thereof from $824.99 to $626.36, and as thus amended the same is now affirmed, appellee to pay costs of appeal.