248 So.2d 419 (1971)
Arthur WOODFORK
v.
Irwin R. SANDERS.
No. 4274.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1971.
Rehearing Denied June 7, 1971.
*420 Benton & Moseley by Thomas H. Benton, Baton Rouge, for plaintiff-appellant.
Marian Mayer Berkett of Deutsch, Kerrigan & Stiles, New Orleans, for defendant-appellee.
Before REDMANN, STOULIG and BOUTALL, JJ.
REDMANN, Judge.
Plaintiff, the universal legatee under a will a trial court held formally invalid, appeals from the dismissal, on exception of no cause of action, of his damage suit against the testator's attorney who prepared the will.
The substance of plaintiff's petition (as amended) is that plaintiff (whom defendant represented in another matter) brought the would-be testator to defendant to have a will executed, in accord with testator's wishes, naming plaintiff universal legatee. Defendant, "a licensed attorney at law", prepared the will in attempted compliance *421 with the statutory form provided by R.S. 9:2442, and had plaintiff (the universal legatee) sign the will as one of the two witnesses. The will was decreed formally invalid by the Civil District Court. Plaintiff asked, as damages, the gross asset value of the succession (with no deduction of debts, costs, fees and death taxes).
Defendant's exception was based, essentially, on lack of attorney-client privity, and on the theory that defendant acted as a Notary Public, rather than as an attorney at law, in the confection of the will.
On our own motion, we requested both parties to brief the question of the will's formal validity and have had the benefit of able argument.
Because we hold the will formally valid and because the petition states only the will's invalidity as the cause of the loss of the estate, we affirm on those grounds the judgment maintaining the exception of no cause of action, although we grant leave to amend. We will not discuss the issues raised by defendant on the exception except in connection with leave to amend.

Validity of the Will
Insofar as concerns testator's succession and the heirs in whose favor this will was adjudged invalid, that judgment has apparently become final for lack of a timely appeal; Succession of Mallary, 220 La. 825, 57 So.2d 737 (1952).
But that judgment does not bind defendant, who was in no way a party to that proceeding, not even as counsel. (Plaintiff was then represented by present counsel.) The authority of the thing adjudged affects only the parties; C.C. art. 2286.
Therefore we examine the question of the will's formal validity just as if we were ruling on the will itself.
The statutory will form is authorized by R.S. 9:2442-9:2443, enacted by Acts 1952, No. 66, and amended by Acts 1964, No. 123, § 1.
We first note that R.S. 9:2442 provides, in part (with emphasis added):

"In addition to the methods provided in the Louisiana Civil Code, a will shall be valid if in writing * * * signed by the testator in the presence of a notary public and two witnesses in the following manner: * * *"
R.S. 9:2443 provides:
"Except as provided in R.S. 9:2442 with respect to a testator who is physically unable to sign his name, those who know not how or are not able to sign their names, and those who know not how or are not able to read, cannot make dispositions in the form of the will provided for in R.S. 9:2442, nor be attesting witnesses thereto." (Emphasis added.)
Our initial impression of the intent of R.S. 9:2442-9:2443, as amended, is that, in addition to (and therefore without complying with) the Civil Code methods, a will "shall be valid" if the statutory form is met. The will here is argued to be formally invalid because the legatee was a witness, and the Civil Code, art. 1592, provides "Neither can testaments be witnessed by those who are constituted heirs or named legatees, under whatsoever title it may be." But the statute's only disqualification is for inability to sign one's name or to read.
Nevertheless we find that in Succession of Hackett, 187 So.2d 485 (La.App. 1966), counsel for the defendant in an attack on a trust under will apparently conceded (on facts in fact occurring prior to the 1964 amendment of R.S. 9:2443) that witnesses to the additional statutory form of will must meet the Civil Code qualifications of art. 1592. That counsel in Hackett did not afford the question much study is evident from the court's recital of the circumstances at 187 So.2d 486:
"In the course of oral argument before this court, counsel for the defendant, Richard *422 Alexander Hackett, dramatically informed us that one of the witnesses to Mrs. Hackett's testament was also a named legatee therein, thereby rendering the will invalid.[1]
"Respective counsel failed to notice this fact during the trial in the lower court. The briefs which were submitted to us on appeal did not even allude to this error. Defendant's counsel discovered the invalidity the night before the case was fixed for argument here."
The court apparently accepted the defendant's concession that the statutory will, which defendant sought to uphold, would be invalid if a witness were also a legatee. We remanded to the trial court "in order that evidence may be adduced therein to prove the identity of the legatee and the said witness, and thereafter to determine the validity of the will".
We also find that our Supreme Court in obiter dictum in Succession of Eck, 233 La. 764, 98 So.2d 181, 185 (1957), suggested C.C. art. 1592 might have application to a statutory will. Eck held valid a will witnessed by the universal legatee's wife. The obiter reasoning of Eck was:
"* * * There are no provisions in Act 66 of 1952, LSA-R.S. 9:2442, with respect to who may witness a will drawn under its provisions. Under such circumstances, the substantive law of Louisiana applies. Mrs. Micas did not fall within any of the incapacities set forth in the Revised Civil Code. LSA-C.C. arts. 1591, 1592."
Since the 1964 amendment of R.S. 9:2443, it is, of course, no longer true that there are "no provisions * * * with respect to who may witness" a statutory will.
Civil Code Book III, Title II, chap. 6, sec. 2, "General Rules on the Form of Testaments," arts. 1574-1595, prescribes rules for the nuncupative by public and private act, mystic, and olographic wills. Included in that section are:

"Art. 1591. The following persons are absolutely incapable of being witnesses to testaments:
"1. Children who have not obtained the age of sixteen years complete.
"2. Persons insane, deaf, dumb or blind.
"3. Persons whom the criminal laws declare incapable of exercising civil functions.
"4. Married women to the wills of their husbands.

"Art. 1592. Neither can testaments be witnessed by those who are constituted heirs or named legatees, under whatsoever title it may be.

"Art. 1593. Mystic testaments are excepted from the preceding article.

"Art. 1595. The formalities, to which testaments are subject by the provisions of the present section, must be observed; otherwise the testaments are null and void."
The importance of art. 1595's declaration of nullity may be underscored by observing that art. 1592 itself does not declare the legatee-witnessed will null: except for art. 1595, it might be argued that art. 1592's prohibition could be satisfied by merely holding the witness-legatee unable to take under the will, thus holding the will otherwise valid. Especially where, for example (as the Hackett record shows), a manypage, multi-provisioned will, disposing of vast assets, includes one $200 legacy to a servant, the use of that servant as a witness might (except for art. 1595) be construed as affecting only the servant's legacy. The basic prohibition of art. 1592 (taken by itself) is against one being both witness and legatee (the purpose being presumably to avoid undue influence, imposition or fraud). In the case of a trifling legacy to a witness, justice and the fundamental principle of maintaining testacy *423 would appear to be better served by holding the witness cannot be a legatee, but only the legacy to the witness fails and the remainder of the will is given effect.[2]
However, the wording of art. 1595 is that the testament (not the mere legacy) is null for noncompliance with the Civil Code formalities. Thus, if art. 1595 applies, a statutory will would be null if it did not comply with Civil Code formalities.
But the language of R.S. 9:2442 could hardly more clearly imply that C.C. art. 1595 cannot invalidate a statutory will: "In addition to the methods provided in the Louisiana Civil Code, a will shall be valid if" the statute's requirements are met.
As a minimum, it appears that C.C. art. 1595 cannot apply to statutory wills. Accordingly, even if art. 1592 were held applicable, the possibility of limiting its effect to invalidating only the legacy to the witness, and not the entire will, seems very strong.
Apart from reliance on Eck and Hackett (the facts of which pre-dated the 1964 witness disqualification provisions of R.S. 9:2443), plaintiff's argument against the validity of a legatee-witnessed will is that excluding application of C.C. art. 1592 would also exclude application of C.C. art. 1591, and thus allow infants, insane persons, criminals and wives of testators to witness wills (as long as they could sign their names and read, R.S. 9:2443).
Defendant argues excluding art. 1592 would not necessarily exclude art. 1591, since art. 1593 excludes art. 1592 as to mystic wills without excluding art. 1591. There is a parallel between mystic and statutory wills. One purpose and effect of the statutory will form was to eliminate the necessity of reading the will to notary and witnesses. This charge is especially helpful where lengthy and complex trust provisions might be incorporated. See Comment, 28 Tulane L.Rev. 288, 296-7 (1954). Where the will is not read, and accordingly a witness (such as the cook in Hackett) would ordinarily not know he was a legatee, the witness's position is not altogether dissimilar to that of a mystic will's witnesses.
Thus, just as art. 1593 provides for mystic wills, we might hold art. 1592 inapplicable to statutory wills yet not hold art. 1591 inapplicable.
Still, reasoning that R.S. 9:2442 requires that none of the Civil Code formalities are required for the validity of a statutory will, implying therefore that art. 1591 would also not apply, would not completely open the gates that article closed.
R.S. 9:2443's requirement of ability to sign one's name and to read would still disqualify some children, some insane persons (e. g., the catatonic), some dumb persons (those whose disability to read might be shown), and the blind. The obvious purpose of disqualifying the deaf as witnesses is not present in the case of a statutory will. Indeed it would seem insufferably arbitrary to deny validity to a statutory will on the basis that use of a deaf witness violated a codal article drafted with only nuncupative wills and mystic wills in mind, which ordinarily require the witnesses to hear something.[3] *424 Generally, the criminal laws in Louisiana do not declare persons incapable of exercising civil functions; and the Married Women's Emancipation Act, R.S. 9:101, declares married women "fully emancipated from all the disabilities and relieved from all the incapacities to which, as such, they were formally subject." Accordingly it may be doubted whether C.C. art. 1591, paras. 3 and 4, retain any force at all today.
In adopting R.S. 9:2442-9:2443, as amended in 1964, the Legislature may well have accepted the test of reading and name-writing as preferable to the codal tests, insofar as statutory wills are concerned.
Defendant has furnished us an elaborate history of will witness requirements, beginning with the pre-Justinian Roman Law's testamentum per oes et libram, a form of "sale" by mancipatio from testator to heir in the presence of seven witnesses.
We have about-faced from that position, where the heir's presence was indispensable, through an interesting course of development, to the point where the Code Napoleon, art. 975, disqualified, as attesting witnesses to a will by public act, not only the legatees but also their relatives by blood or affinity through the fourth degree. (Interestingly, we nowhere find a prohibition against the legatee's presence at the execution of the will.)
Louisiana added, in its Digest of 1808, a nuncupative form of will by private act, unknown to the Code Napoleon, presumably because of the extreme scarcity of notaries in early Louisiana. Accordingly the Code Napoleon's prohibition against legatees (and their relatives) being witnesses to a "testament by public act" became a flat prohibition against legatee-witnesses to "testaments", Digest 1808, p. 232, art. 106. When the 1825 Civil Code was adopted, its art. 1586 enacted today's art. 1593's exception of mystic testaments. (Mystic wills were also excepted in France by the law of 25 Ventose An XI. "This must be so since the witnesses do not know the content of the testament." Aubry & rau, Testamentary Successions and Gratuitous Dispositions [La.Law. Inst. trans.], § 671, n. 18.)
Indisputably, neither C.C. art. 1592 nor any of its forebears was historically intended to govern statutory wills, which were not authorized until 1952. Indisputably, the statute authorizing such will form not only does not adopt Civil Code formal requirements, but rather it apparently eliminates them: "In addition to the methods provided by the Louisiana Civil Code, a will shall be valid if" the statutory form is met.
Courts have no authority to impose additional formalities on statutory wills and thus deny the power of testation to citizens who have complied with the Legislature's requirements. Succession of Suarez, 219 So.2d 1 (La.App. 1969), cert. denied, 253 La. 1090, 221 So.2d 520. Despite the statute-provided sample attestation clause having blanks for day, month and year (one would suppose, to be filled in), our Supreme Court has upheld the validity of an incompletely dated statutory will; Succession of Gordon, 257 La. 1086, 245 So.2d 319 (1971). Although there was no majority opinion (three justices concurring, one dissenting and one recused), it seems fair to cite Gordon as supportive of the view that the statutory will "shall be valid" unless an explicit requirement of R. S. 9:2442-9:2443 is violated.
We so hold. The will confected under defendant attorney's supervision was valid. C.C. art. 1592 has no application to statutory wills.
Accordingly plaintiff has not stated a cause of action for the loss of the estate against defendant, whose advice as attorney, however, questionable in this instance, at least did not cause the will to be invalid and did not by itself cause plaintiff to lose the estate (much less its gross value, as sued for).

*425 Leave to Amend

Mere failure to state a cause of action does not mean failure to have a cause of action. Unless one of the other grounds of exception urged by defendant is valid, we would therefore allow plaintiff leave to amend his petition, C.C.P. art. 934.
Defendant's objection that, if he is liable, he is liable only as notary apparently misconceives himself as several persons. The petition alleges testator went to defendant as a lawyer for legal advice and assistance in confecting a will. If defendant additionally undertook to act as a notary, the petition nowhere alleges that (and we are unable to conceive circumstances under which) defendant at some stage ceased to act as attorney at law. Accordingly failure to allege acts "as notary" is not a defect.
Defendant's second ground of exception, lack of attorney-client privity between himself and plaintiff, is likewise rejected. The testator sought defendant's professional legal assistance in order to benefit plaintiff, the intended universal legatee. We believe the stipulation that a lawyer is to confect a will to institute third parties legatees is a stipulation pour autrui, C.C. art. 1890, for damages for breach of which the third party may sue. See the analogous contract case of Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (1969). On other grounds it has been held, in Weintz v. Kramer, 44 La.Ann. 35, 10 So. 416 (1892), that a notary is liable to intended legatees deprived of their legacy by the notary's clear error. We are satisfied that an attorney's clear error in confecting a will, which the exercise of reasonable competence would have avoided, constitutes a breach of the contractual stipulation for the benefit of the intended legatee.
Finally, because the lawyer's error must be one that the exercise of reasonable competence would have avoided, we note that defendant's error in using a legatee as witness may have been such an error. Presumably evidence from other practitioners will add light on this question. We here say only that the fact the error did not invalidate the will and thus did not by itself cause all plaintiff's damage means neither that it was not a culpable error nor that it did not cause damage.
Therefore plaintiff may be able to amend his petition to state some cause of action against this defendant.
The judgment appealed from, maintaining the exception of no cause of action, is accordingly amended to grant leave to amend within a delay to be set by the district court, and as amended is affirmed; and this matter is remanded for further proceedings not inconsistent with this opinion.
Affirmed as amended and remanded.
NOTES
[1] [The court's footnote quoted C.C. art. 1592.]
[2] This is the result in England and many other states. "As a general rule a testamentary gift to an attesting or subscribing witness to the will is void, unless there are sufficient other witnesses to the will to establish it." 94 C.J.S. Wills § 102 a. The gift to the witness being void, the witness is a competent witness, "thus avoiding the sacrifice of the will except as to the devises or legacies to the witnesses." Ibid., § 185c.
[3] The mystic will's testator had to "declare", C.C. art. 1584, in presence of the witnesses, that the paper contains his will (and how it was written). The statutory will's testator need only so "signify". Since the mystic will could be written by a third person, and the testator might not be able to write more than his name, at least in some cases the testator's declaring would have to be oral.