SARTAIN, Judge.
These consolidated cases involve the validity vel non of a nuncupative will by public act and the resulting consequences if the same is declared a nullity.
The will in question was executed by Mrs. Freddie Robertson Killingsworth (decedent) on October 7, 1955, before W. P. Obier, an Iberville Parish Notary Public. Attesting witnesses were Lorraine Melan-con (now Mrs. Passantino), Edna Lapeze, and R. G. Desobry.
Mrs. Killingsworth died on July 19, 1961. Mr. Obier departed this life on May 10, 1961.
Following Mrs. Killingsworth’s death, the will was presented for probate and the Citizens Bank & Trust Company, Plaque-mine, Louisiana, was appointed and confirmed as testamentary executor. Mr. W. B. Middleton, Jr., the surviving law partner of Mr. W. P. Obier, acted as attorney for the executor. Various acts of administration were performed, certain movable property was sold, and various debts paid. These acts are not complained of. However, the will contained a monetary bequest to Mr. Obier, the officiating notary. Some legatees were doubtful as to whether or not this particular bequest voided the entire will. Accordingly, the executor and certain legatees filed suit for declaratory judgment asking that the will be declared valid and only the bequest to the notary be stricken. Later the petition was amended and other plaintiffs were added. It alleged that certain heirs of decedent intended to *200 urge the invalidity of the will on the additional grounds that the instrument was not personally typed by the notary. Declaratory relief was therefore sought on both points. In the amending petition for a declaratory judgment, while urging the validity of the will, plaintiffs alternatively ask that in the event it is declared void, that petitioners have been damaged by the professional error of Mr. Obier and “are entitled to reparation from his heirs, or his heirs and surviving law partner, Mr. W. B. Middleton, Jr.” Joined as defendants to this alternative demand were the heirs of Mr. Obier, Mr. Middleton, and St. Paul Fire & Marine Insurance Co. (St. Paul), the professional liability insurer of the law firm of Obier and Middleton.
A second suit for declaratory judgment was filed by the remaining legatees seeking identical relief as those plaintiffs named in the first and amending petitions.
The trial judge granted judgment in favor of the plaintiffs and ordered the will executed according to its terms. The defendants, certain legal heirs appealed, and we reversed. See Succession of Killingsworth, La.App., 194 So.2d 331, writs refused, 250 La. 175, 194 So.2d 738 (1967).
Shortly thereafter, third party claims were filed by the heirs of Mr. Obier, Mr. Middleton and St. Paul against the legal heirs of Mrs. Killingsworth. While they reasserted the validity of the will, they sought judgment against the heirs of the decedent for any sums that might be cast against them in favor of the legatees. Said third party plaintiffs contend that “it would be manifestly unjust and would amount to unjust enrichment to permit third party defendants to retain, unencumbered, inheritances which, except for the alleged error by Mr. Obier, they would never have received.”
On remand, the trial judge held that the will had not been typed by Mr. Obier and declared it to be invalid; that the former law firm of Obier and Middleton was responsible to the legatees named by the decedent for their failure to receive the intended bequests; that St. Paul had insurance covering the law firm, its members, and the heirs of Mr. Obier, and was, therefore, responsible under the terms and limits of its policy. The loss to eight of the legatees was fixed in specific amounts aggregating $45,606.05. Judgment was further rendered in their favor, decreeing defendant, W. B. Middleton and St. Paul liable, in solido, for one-half and the heirs of W. P. Obier and St. Paul liable, in solido, for the remaining one-half, together with legal interest at the rate of five percent per an-num from date of judicial demand, until paid. The third party demands of the heirs of Obier, Middleton and St. Paul were rejected. The purported testamentary executor was reserved the right to claim custodial fees for itself and compensation for its attorney.
From the above judgment, the heirs of Obier, Middleton and St. Paul appealed suspensively. Certain legatees appealed suspensively, and other legatees appealed devolutively. There were also two answers to the appeals of the heirs of Obier, Middleton and St. Paul, the merits of which we shall discuss later.
The issues thus presented are:
(1) Is the will valid ?
If invalid:
(2) What are the rights of the legatees?
(3) What is the liability of
(a) the heirs of W. P. Obier, the officiating notary,
(b) W. B. Middleton, Jr., the notary’s surviving law partner, and
(c) St. Paul, the professional liability insurer of the law firm of Obier and Middleton?
(4) How and in what amounts are damages to be assessed ?
*201 (5) Are third party plaintiffs entitled to recover against the legal heirs of the decedent on the grounds of unjust enrichment ?
We shall discuss these issues in the order mentioned.
VALIDITY OF THE WILL
First, it should be noted that some of the legatees are also legal heirs of the decedent. If the will is valid, they would receive bequests in excess of any sums they would be entitled to receive under an intestate distribution of the assets of the estate. Also, not all legal heirs were named in the will. Of course, the defendants urge its validity. Therefore, for the purpose of discussing the validity of the will, we shall refer to those parties urging its validity as proponents and those attacking its validity as opponents.
The nuncupative will by public act is in fact a notarial instrument which is self-proving. It is the most formal of all wills, imposing seven special requirements. C.C. Articles 1578, 1579, and 1580. 36 Tul.L.Rev. 1. The proponents first submit the well settled principle of law that its contents are presumed true until disproved. Renfrow v. McCain, 185 La. 135, 168 So. 753 (1936), including the strong presumption that the formalities required are satisfied where the document itself evidences the same. Bernard v. Francez, 166 La. 487, 117 So. 565 (1928).
Their first defense against the attack on the will is that parol evidence is not admissible by parties to the instrument (witnesses) to contradict their previously announced solemn declarations. Bernard v. Francez, supra, Succession of Beattie, 163 La. 831, 112 So. 802 (1927), and Talton v. Todd, 233 La. 146, 96 So.2d 327 (1957).
In Bernard, the will was sought to be voided on the testimony of two of the attesting witnesses. The court stated: (117 So. 565, 567)
“The testimony of the two witnesses is so confusing and their recollection is so hazy, indefinite, and uncertain that a court would not be justified in setting aside the will in question, even if there was no evidence to the contrary.
The rule of jurisprudence is that, to set aside a will of this character, the proof of noncompliance with the essentials as recited in the notarial act must be peculiarly strong to overcome the presumption in favor of the will, and the testimony of the witnesses themselves who have given their solemn attestation to the compliance of the required formalities is entitled to little weight.
This court said in Succession of Beattie, 163 La. 831, 112 So. [802,] 805:
“ ‘Testimony of subscribing witnesses which is adduced on the contest of the will and which, in effect, impeaches the solemn statements contained in the instrument which by their signatures they have attested as correct, is not in itself sufficient to overcome the presumption of validity arising from their presence and signatures and the official certificate of a public officer fortified by his oath.
“ ‘Their testimony must be corroborated by independent facts or reasonable inferences.’
“See, also, Major v. Esneault, 7 La.Ann. [51,] 52; Succession of Young, 11 La.Ann. 65; Starrs v. Mason, 32 La.Ann. [8,] 9; Succession of Cauvien, 46 La.Ann. 1412, [16 So. 309],
“Counsel criticize the doctrine announced in the Beattie Case as being without precedent, and they declare that such a principle is fraught with latent dangers of fraud on the rights of a testator to dispose of his property. But there would be room for greater fraud on the right of the testator to dispose of his property and on the rights of the legatees if the principle contended for by *202 counsel should be recognized — -that is, to permit subscribing witnesses to deny their own solemn act and to break down the solemn authentic act of a sworn officer.
“As said in the Beattie Case:
“ ‘Otherwise * * * testators would be at the mercy of defective memories and uncertain minds, to say nothing of venal callousness that for a consideration or other improper motive might choose to modify or erase a record when time may have already written the impossibility of remedying the consequences of the nullity.’
“The testimony of the two attesting witnesses in the instant case is not only not peculiarly strong and convincing, but it is not even persuasive in the slightest degree.”
In Taitón, which is the last expression by our Supreme Court on the subject, the court reaffirmed its pronouncements in the Siiccession of Beattie and Bernard, quoted above. Our review of these cases leads us to the conclusion that parol evidence is admissible but that such evidence standing alone is entitled to “little weight”. It must be strong and convincing and corroborated by “independent facts or reasonable inferences”.
Mrs. Passantino, one of the subscribing witnesses, testified that on the date the will was executed she was a secre-trary for the firm of Obier and Middleton. She stated that she typed the will from Mr. Obier’s dictation as Mrs. Killingsworth expressed her wishes to him. Her testimony was very clear and explicit. Of particular significance to us, as urged by the opponents to the will, is the fact that Mrs. Passantino is still employed by Mr. Middleton and her testimony was adverse to his interests, as he is one of the co-defendants. It is urged, and we agree, that if there was any doubt in this witness’s mind as to the circumstances surrounding the preparation of the will, she naturally would have been hesitant to give such testimony. The testimony of Mrs. Passantino is corroborated by that of Miss Edna Lapeze, who also witnessed the will.
The third witness, Mr. R. G. Desobry, could neither deny nor confirm the testimony of Mrs. Passantino and Mrs. Lapeze. He acknowledged the fact that he witnessed the will but could not recall whether it was or was not typed by Mrs. Passan-tino.
The opponents contend that the will itself supplies the added requirement that the testimony of the attesting witnesses be “corroborated by independent facts or reasonable inferences”.
Two bequests in the instrument are couched in the following language:
sjc % ‡ sfi %
“5. I leave my diamond engagement ring and all other jewelry I may die possessed of to my niece, Rome Schlater Johnson Tuttle of Salem, Virginia; if she precedes me the bequest in this paragraph to go to her children, share and share alike.”
% ifc 5}i ifi
“I bequeath to Gwennie Robertson Kopfler of Hammond, Louisiana the sum of $5,000.00. Should she precede me the bequest in this paragraph will go to her heirs in equal shares.” (Emphasis ours)
Another bequest is worded thusly:
* ‡ * H*
“After paying all debts I direct that the revenue of my estate be divided equally between Rome Schlater Johnson Tuttle, Mary Lewis Johnson Row, Regina Bronner and Winona Johnson Bell, share and share alike, and in case of the death of any of the legatees named in this paragraph their respective shares to go to their heirs.” (Emphasis ours)
The opponents argue that an experienced attorney such as Mr. Obier would not have *203 used the words “precedes” or “precede” but would have used the familiar legal expressions of “precede (s) me in death” or “predecease (s) me”.
The proponents contend that the use of either word or words “precede (s)” or “predecease (s)” reflect the intention of the testatrix, that their respective meanings are the same, and the failure to employ any particular phraseology is not significant. Were this the only factor, we would agree.
However, there follows the third bequest, above, where obviously it was the Testatrix’s intention to make a residual donation hut the word “revenue” is found instead of “residue”. These two words are not remotely synonymous and each has a distinct legal meaning. Further, this particular bequest is the last of eleven and follows five monetary bequests to be paid out of proceeds derived from the sale of decedent’s remaining property.
In his written reasons for judgment, the trial judge stated:
“In the present case no testimony other than that of the subscribing witnesses was offered and naturally that evidence was objected to. The weight of that evidence is that Mr. Obier’s secretary, one of the witnesses, and not Mr. Obier actually struck the typewriter keys. If the will can be nullified on that basis and on that evidence, then the will must be declared invalid. It is argued that there is a reasonable inference to corroborate their testimony in that the word “revenue” is used in the will when obviously the word “residue” is intended. Certainly the word residue was intended for the will clearly named selective relatives to receive everything but a few particular legacies for nothing at all appears in the will to suggest that the testatrix intended to establish a sort of a usufruct for these legatees and neglected to say to whom the naked ownership was bequeathed. The Court having concluded that “residue” was meant is now asked on the basis of that conclusion to nullify the will for it is said that this is proof that Mr. Obier did not type the will and if he had he surely would have typed “residue” and not “revenue” and the mistake must be that of the secretary. The argument is plausible but the Court must determine whether it is sufficient to nullify the will for in the absence of that inference the testimony of the witnesses who on November 15, 1967, challenged their own statements made twelve years earlier, October 7, 1955, is not, as a matter of law, sufficient to nullify the will. Notwithstanding that one of the three witnesses was unwilling to swear that Mr. Obier did not himself type the will and notwithstanding the fact that the secretary who says she typed it was uncertain as to whether the will was read though no one else doubted it, and although the Court recognizes the great chance of a fallible memory over a twelve-year span, the Court considers that the inference of the misused word is sufficient to corroborate the testimony of the lady who said she typed the will. This makes it necessary to dispose of the other questions.”
We hold that the trial judge is correct in his findings of fact and application of the law thereto, and that the will in question was indeed typed by Mrs. Passantino, Mr. Obier’s secretary.
The opponents again urge that in the event we should conclude that the will was not typed by the officiating notary, it is nevertheless valid and we should reconsider our decision in Succession of Killings-worth, supra, where we held to the contrary. It suffices here to say that we have again reconsidered the matter and are of the opinion that, whereas, an officiating notary may type the will himself, Prudhomme v. Savant, 150 La. 256, 90 So. 640 (1922), he may not permit his secretary to do so. C.C. Art. 1578 clearly states that the instrument must be dictated by the testator and written by the notary. In deny *204 ing writs when the matter was originally before us, the Supreme Court found, “No error of law”. Succession of Killingsworth, 250 La. 175, 194 So.2d 738.
THE RIGHTS OF THE LEGATEES
We now turn to the rights of the legatees. Defendants contend that those plaintiffs, who seek redress and endeavor to recover the amounts bequeathed to them in the will, are not entitled to recover because they were not in privity to the employment contract between the testatrix and the Notary. Appropriate peremptory exceptions of no rights1 of action were timely directed to this issue and rejected by the trial judge. This contention is grounded on the general rule that no cause of action in tort can arise from a breach of a duty existing by virtue of a contract unless there is privity of contract between the person allegedly injured and the alleged tort feasor. 38 Am.Jur., p. 662. Cited in support thereof are certain California authorities, C.C. Art. 1902,[1] R.S. 35:191, and Weintz v. Kramer, 44 La.Ann. 35, 10 So. 416 (1892).
The legatees assert that they have a cause of action founded either in obligation (C.C. Art. 1890)[2] or quasi-offense (see Arts. 2315 and 2316) [3].
Previous opinions of our Appellate and Supreme Courts have stated that such an action as here considered is ex contractu. In Weintz v. Kramer, supra, the court stated that inasmuch as the plaintiffs were seeking recovery against a Notary’s bond, it did not have to determine whether the Notary’s breach of duty “was or was not technically a quasi offense.” (10 So. 416, 417). See Nolan v. Labatut, 117 La. 431, 41 So. 713, where judgment was sought on the bond of a Notary who absconded with funds.
In Woodfork v. Sanders, La.App., 248 So.2d 419, 425, when addressing itself to the issue of privity of contract, our brothers of the Fourth Circuit stated :
“[6,7] Defendant’s second ground of exception, lack of attorney-client privity between himself and plaintiff, is likewise rejected. The testator sought defendant’s professional legal assistance in order to benefit plaintiff, the intended universal legatee. We believe the stipulation that a lawyer is1 to confect a will to institute third parties legatees is a stipulation pour autrui, C.C. art. 1890, for damages for breach of which the third party may sue. See the analogous contract case of Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (1969). On other grounds it has been held, in Weintz v. Kramer, 44 La.Ann. 35, 10 So. 416 (1892), that a notary is liable to intended legatees deprived of their legacy by the notary’s clear error. We are satisfied that an attorney’s clear error in confecting a will, which the exercise of reasonable competence would have avoided, constitutes a breach of the contractual stipulation for the benefit of the intended legatee.”
The record is clear that Mr. Obier was the decedent’s attorney and it was for this reason that he acted as the officiating Notary. As such, he is held to the same rule of liability for want of professional *205 skill and diligence in practice as are physicians, surgeons, and others who present themselves as possessing skills and qualifications in their respective profession. 5 Am.Jur. § 125, p. 334; 7 C.J.S. Attorney and Client § 140, p. 977; Aladdin Oil Co. v. Marque, 157 So.2d 368 (4th La.App. 1963, writs ref.).
With due respect to our brothers of the 4th Circuit, who in Woodfork v. Sanders, supra, held that a stipulation engaging the attorney to confect a will to institute third parties legatees is a stipulation pour autrui (C.C. Art. 1890), we prefer to hinge our decision on C.C. Art. 2315.
First, we are not convinced that such a stipulation is a true stipulation pour atctrui. See Prof. J. Denson Smith’s article at 11 T.L.R. 18. Second, C.C. Arts. 1890 and 1902 imply the assent of the beneficiary and once such assent is given the stipulation cannot be revoked without the beneficiary’s consent. Certainly, the beneficiary is not a true party to such a stipulation until he does assent to the agreement. Third, a legatee cannot by law accept until the will becomes effective which is upon the death of the Testator. Fourth, a testator may revoke, change or alter his will at any time.
But more importantly, we are of the opinion that C.C. Art. 2315 is sufficiently broad in its scope to encompass the claims asserted herein by the legatees. The foreseeability of damage is certain. The injured parties are identified and their loss is specific.
At 45 A.L.R.3rd, page 1185, the following comment is quoted:
“Although attorneys have continued to be held not liable for professional negligence to persons other than their clients in apparently a majority of states, it appears that a new trend may be emerging under which an attorney may be held liable, under certain circumstances, to third persons for his professional negligence, either under a third-party beneficiary contract theory or under some other theory. In those states adopting this approach, liability to third parties is generally determined under a ‘balancing’ test which considers the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant’s conduct and the injury suffered, the moral blame attached to the defendant’s conduct, and the policy of preventing future harm.
“The two situations most productive of third-party claims are will drafting and examination of titles. Both of these situations, by their very nature, lend themselves to injuries to third parties in the event of negligence. In the case of the drafting and execution of wills, the courts have often pointed out that the persons most likely to be injured by mistake are the intended beneficiaries, who are generally not in privity of contract with the attorney; the client is generally deceased by the time the mistake is discovered, and the estate’s only claim would seem to be for the recovery of attorney’s fees. To deny recovery would thus allow the attorney to escape damages while seriously injuring the intended beneficiary.”
(Emphasis ours)
On the question of prescription, we hold that prescription does not commence to run until there is a final judgment decreeing the will to be invalid. We cannot agree with the contentions of the defendants that if an error was made in the confection of the will, then prescription commenced to run from the date of its execution, October 7, 1955. As stated above, a nuncupative will by public act is self-proving and its contents are presumed true until the contrary is shown. The will appears proper in every respect, both as to *206 form and substance (save the bequest to the officiating Notary).
LIABILITY OF THE DEFENDANTS
It is contended on behalf of the heirs of Mr. Obier that they should not be held liable to the legatees on the ground that he (Obier) was not careless or negligent in executing the instrument. As was pointed out in our discussion of the rights of the legatees, they have a claim against the Notary for the losses they sustained due to the invalidity of the instrument. Weintz v. Kramer, Woodfork v. Sanders, and Aladdin Oil Co. v. Marque, supra. The duty of the Notary here was to prepare a will in accordance with the requirements of C.C. Art. 1578 et seq. These articles permit no latitude. It is not a question of reasonable alternatives and the trial judge reluctantly stated that the Notary was not at liberty to “adventure in pioneering the law”. In the syllabus prepared by the court in Weintz v. Kramer, supra, it is stated:
“5. A Notary undertakes the confection of a testament by public act with full knowledge that its validity depends on the most exact fulfillment of the formalities required by law. * * * If he chooses to deviate from the law, and to substitute language of his own choice to convey the same meaning, he does so at his own risk, and cannot throw resulting loss on innocent persons.”
We have responded to all of the objections raised by Mr. Middleton to the judgment rendered against him in the trial court but one. In his written reasons for judgment and the judgment subsequently signed in accordance therewith, the trial judge held that the “former firm of Obier and Middleton” is responsible to the legatees for their failure to receive the intended bequests. However, the judgment itemizes the damages and' assesses one-half thereof against the heirs of Mr. Obier and one-half against Mr. Middleton. We do not believe it was the intention of the judge, a quo, to cast Mr. Middleton, jointly and in solido, with the heirs of Mr. Obier for the full amount of the judgment.
A partnership for the practice of law is an ordinary partnership, Jones v. Caperton and Weeks, 15 La.Ann. 475 (1860). A partner in an ordinary partnership who commits an offense or quasi offense is liable for the full amount of plaintiff’s damages. However, a partner who is not a tort feasor is liable only for his virile share as a partner. Champagne v. Southern Farm Bureau Casualty Insurance Co., 170 So.2d 226, 4th La.App., 1965, writs ref. Counsel for Mr. Middleton concedes this point, but urges that Mrs. Killings-worth engaged Mr. Obier as a Notary and not as an attorney and that he (Middleton) should not be vicariously cast in judgment for the error of Mr. Obier. The record reflects that Mr. Obier was Mrs. Killings-worth’s attorney and that she visited him at his office frequently. Absent any testimony to the contrary, we must hold that the confection of the will was partnership business.
St. Paul, the professional liability insurer of the law firm of Obier and Middleton, contends that under the terms of its policy it does not afford coverage for the heirs of Mr. Obier. It is argued that the error was committed on October 7, 1955, the date the will was executed. The policy itself was issued on February 5, 1960, to expire on February 5, 1963. The first claim made with respect to the invalidity of the will occurred in October of 1961, a date within the policy period. St. Paul concedes that had Mr. Obier lived, he would have been covered but his death dissolved the partnership and neither Mr. Obier nor his heirs are insured. On July 14, 1961, the policy was endorsed to delete the name of Mr. Obier as an insured, though the name of Obier and Middleton was still used.
The policy itself provides:
“8. Assignment. The interest of the Insured under this policy shall not be as *207 signable to any other person. In the event of the death or incompetency of the Insured, this policy shall cover the insured’s legal representative as an insured as respects any liability previously incurred and covered by this policy.”
“9. Cancelation. This policy may be canceled by the named Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the Company by mailing to the named Insured at his address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender, or the effective date and hour of cancelation stated in the notice, shall become the end of the policy period. Delivery of such written notice either by the named Insured or by the Company shall be equivalent to mailing.
“If the named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable 'after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation.”
It is stipulated that no cancellation notice was sent to “Obier and Mid^ dleton” and no premium was refunded. The trial judge held that Mrs. Killings-worth died during the policy period and that Mr. Obier owed a continuing duty to correct a defective will. The plaintiffs argue the well-established rule that policies of insurance are to be interpreted reasonably in favor of the insured and that if it was the intention of St. Paul immediately upon the death of its insured to terminate coverage, it should have clearly expressed this fact in the terms of the policy. We agree. It appears to us that Section 8 of the policy, quoted above, does not lend itself to the interpretation now offered to defeat coverage.
ASSESSMENT OF DAMAGES
The trial judge properly held that the extent of the loss of the legatees should be the difference between what they will inherit as heirs and what they would have received as legatees. However, in computing the amounts that each legatee should have received, he used the gross value of the estate as of August 24, 1961, and deducted therefrom debts and taxes amounting to $5,995.59, leaving a net estate of $89,769.88. There is contained in the record a stipulation by all parties that the debts of the estate as of November 15, 1967, amounted to $16,767.12. Contained in the same stipulation is a statement showing additional revenues and stock dividends accruing to the estate in the amount of $19,081.95. He denied fees for the executor and its attorney which undoubtedly accounts for the reduction in the overall debts. The judge, a quo, however, reserved unto the executor the right to seek reasonable custodial fees and compensation for its attorney at a later date. It appears to us (1) that the stipulated debts should be recognized and the stipulation honored; (2) that the additional revenues should be considered in determining the loss to the legatees where all but three are also legal heirs; (3) that the estate should be administered to its conclusion by an administrator of the legal heirs’ choice should they see fit to relieve the present executor; and (4) that the fees owed to the executor and its attorney for past services should be determined, to the end that each party who is a legatee-legal heir will know the amount of his respective inheritance and/or damage so that the defendants can be properly cast in judgment.
*208 The record before us is replete with conservatory and administrative evidence on the part of the executor. The estate should hear that portion of the court costs that relate to such matters.
To accomplish the above this matter must be remanded. We are unable to determine these items from the record before us and it appears that the interests of all parties will be best served to have these items recalculated under current conditions. When the damages incurred by the legatees growing out of their failure to receive the intended bequests are calculated, then judgment should be rendered for such amounts in the proportions of one-half of their total sum against defendant, W. B. Middleton and St. Paul, in solido, and for the remaining one-half against the heirs of Mr. W. P. Obier and St. Paul, in solido, with the said defendants being cast for the costs of this appeal.
We concur that that portion of the judgment which awarded John D. Kopfler, Mrs. Clara May Kopfler Conley and Edward Blount Kopfler the sum of $1,666.67 each is correct and definite and should remain. However, the judgment insofar as it fixes damages to Mrs. Rome Schlater Johnston Tuttle, $10,457.52; Mrs. Mary Lewis Johnston Rowe, $10,499.51; Mrs. Winona Johnston Bell, $10,299.51; Mrs. Nona Mae Bronner Miller, $4,674.75; and, Mrs. Barbara Jean Bronner Norton, $4,674.75 is annulled and set aside pending reconsideration on remand.
THIRD PARTY DEMANDS
 St. Paul, Mr. Middleton, and the heirs of Mr. Obier seek third-party relief against the legal heirs of Mrs. Killings-worth on the grounds of unjust enrichment. It is claimed that the legal heirs have been unjustly enriched by the error of Mr. Obier and that but for this error they would not have received their respective portions of the decedent’s estate. We have examined the authorities cited and find the facts therein inapposite to those in the case at bar. In Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18 (1949) and Boxwell et al. v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943), the recipient receives certain advantages resulting from an illegal contract which was entered into in good faith by plaintiff. Such is not the case here. The legal heirs were not parties to the confection of the will and their rights flow from the laws of this state relative to the distribution of an intestate succession. On the other hand, the liability of the heirs of Mr. Obier and Mr. Middleton flow from the act of Mr. Obier in not typing the will himself, wherein he failed to exercise the degree of care and diligence required of a Notary. St. Paul, the insurer, stands in the same position as that of the insured. To permit recovery in their favor would, in effect, validate the error complained of, and permit the insurer to completely escape liability for the very act it insured. Generally, the doctrine of unjust enrichment is inapplicable where the recipient is receiving what the law allows and is thus not unjustly enriched.
Accordingly, for the above and foregoing reasons, the judgment appealed from is affirmed in part, reversed in part, and remanded to the trial court for further proceedings in accordance with the views herein expressed.
Affirmed in part, reversed in part, and remanded.

. “Art. 1902. But a contract, in which anything is stipulated for the benefit of a third person, who lias signified his assent to accept it, can not be revoked as to the advantage stipulated in his favor without his consent.”

. “Art. 1890. A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person. consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked.”

.“Art. 2315. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. . ”
“Art. 2316. Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.”